WILLIAM H. PARSONS et al., Respondents, *v.* JAMES SUTTON et al., Appellants.

In an action upon an account for goods sold and delivered, it appeared that the account had been presented to defendants before the commencement of the action. One item they erased, supposing it charged twice; the balance was not objected to; the item, by mistake, was not included in the complaint or bill of particulars, but, upon the trial, the item was proved clearly. At the close of the evidence, plaintiffs' counsel moved to amend the complaint so as to include the item, which was objected to on the ground of surprise; the objection was overruled. *Held*, no error; that defendants could not have been surprised.

In an action upon a contract, defendant has a right to set up as a counterclaim any cause of action arising upon another contract existing in his favor against plaintiff at the commencement of the action.

The measure of damages for breach of a contract to sell and deliver an article of merchandise at a time and place specified, when the purchaser can go into the market and buy the article, is limited to the difference in value between the contract-price and the market-price at the time and place of delivery.

If there is no market, and the article cannot be had there with reasonable diligence, and the vendee has suffered special damages because of, and which are the proximate and natural results of, the vendor's failure, such damages may be recovered.

The special damage in such case must be alleged and set forth in the pleadings of the party.

Plaintiffs contracted to deliver to defendants, by June 2, 1872, a quantity of "plate paper," to print a frontispiece for the July number of a periodical published by defendants. Plaintiffs did not deliver the paper at the time, but had it ready to deliver June 8th, and so notified

defendants. Defendants had countermanded the order on the seventh, and refused to accept the paper. In an action for other goods sold and delivered, defendants set up the breach of the contract as a counter-claim, alleging that they were unable to print the frontispiece because of the breach, and claiming special damages for the loss of sales and of subscriptions to the periodical, in consequence. Defendants proved that, a day or two after June second, they went to dealers, but could not find similar paper; there was no proof that such paper could not usually be found in the market, or that it could not be manufactured in time, or that defendants could not find paper answering, substantially, the purpose, or that the paper, when ready to be delivered. would not have been as useful as when called for by the contract. *Held,* that defendants were not entitled to special damages; that while they had the right to refuse to accept the paper after the contract time, they could not so refuse and then claim special damage because of inability to procure it.

(Argued April 17, 1876; decided April 25, 1876.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York affirming a judgment in favor of plaintiffs, entered upon a verdict. (Reported below, 7 J. & S., 544.)

The nature of the action and facts are sufficiently set forth in the opinion.

*Thomas Darlington* for the appellants. Defendants had a right to have their counter-claim determined in this action. (Code, § 150.) It was error to exclude the conversation with one of the defendants, a part of which had been proved by plaintiffs. ( *Vibbard* v. *Staats,* 3 Hill, 144 ; *Nesbit* v. *Stringer,* 2 Duer, 26 ; *Bearss* v. *Copley,* 6 Seld., 93 ; *R. P. A. Co.* v. *Warner,* N. Y. W. Dig., 204 ; *Worrall* v. *Parmelee,* 1 Comst., 521.)

*Jno. E. Parsons* for the respondents. The evidence offered to sustain defendants' claim of damages by reason of the alleged breach of the contract of April 19, 1872, was properly excluded. (Benj. on Sales, 618 ; *Barrow* v. *Arnaud,* 8 Q. B., 604, 609 ; *Clark* v. *Pinney,* 7 Cow., 687 ; *Dana* v. *Fiedler,* 12 N. Y., 40 ; *Norton* v. *Wales,* 1 Robt., 561.) A tender of payment

by defendants was a condition precedent to the delivery of the paper. (Benj. on Sales, 557; *Dunham* v. *Pettee*, 4 Seld., 508; *Fickett* v. *Brice*, 22 How., 194; *Anderson* v. *Sherwood*, 56 Barb., 66.) It was not error to exclude proof of damage until the introduction of testimony to make it competent. (*Staring* v. *Bowen*, 6 Barb., 109; *Flynn* v. *Murphy*, 2 E. D. S., 378; *Cass* v. *N. Y. and N. H. R. R. Co.*, 1 id., 522.) The court properly permitted the complaint to be amended so as to include the item of October 8, 1872. (Code, § 173; *Fuller* v. *Roosevelt*, 4 Cow., 144; *Spawn* v. *Veeder*, id., 503; *Melvin* v. *Wood*, 3 Keyes, 533; 1 Burr. Pr., 432.) The court properly refused to permit defendant Franklin to prove that a variance in the weight of the paper would be an injury. (*Gurney* v. *At. and G. W. R. Co.*, 58 N. Y., 358; *Gaylorg Mfg. Co.* v. *Allen*, 53 id., 515; *Beck* v. *Sheldon*, 48 id., 365; *McCornish* v. *Sarson*, 45 id., 265; *Reed* v. *Randall*, 29 id., 358; *Leavenworth* v. *Packer*, 52 Barb., 132.)

E<span>ARL</span>., J. The plaintiffs' complaint is for paper of the value of $1,793.93, sold and delivered to the defendants between June 6th and September 20, 1872. The defence is substantially a general denial and two counter-claims. The first counter-claim is for the sum of eighty dollars, alleged to have been paid to the plaintiffs by the defendants about the 10th day of June, 1872, under a mistake induced by plaintiffs' misrepresentations. The second counter-claim is for damages sustained by defendants by a failure on the part of the plaintiffs to deliver to the defendants a quantity of paper which, on the 19th day of April, 1872, they contracted to deliver on the second day of June thereafter. It is alleged that the paper was to be used for the purpose of printing a frontispiece for the July number of "The Aldine," a periodical published by the defendants, and that in consequence of plaintiffs' failure the defendants were obliged to publish "The Aldine" without the frontispiece, and that they "sustained damages to a large amount by reason of the loss of sale of a large number of copies of said 'Aldine' for the month of

July, and of subsequent numbers thereof, and of subscriptions to the same by reason of the injury to the reputation of said publication."

Intermediate the service of the complaint and the service of the answer, a bill of particulars was served by plaintiffs. There was really no dispute upon the evidence that all the paper for which plaintiffs recovered was sold and delivered to the defendants. A short time before the commencement of this suit an account of plaintiffs' claim containing all the items was presented to the defendants, and payment thereof demanded on several occasions. The defendants did not object to any of the items but the last one, and that they erased by drawing a pencil mark across the same, because, as they supposed, it was charged twice; and that item was proved upon the trial by unquestioned evidence, the defendants' receipt showing its delivery. The last item on the account delivered to the defendants was not covered by the complaint, and was not contained in the bill of particulars. At the close of the evidence plaintiffs' counsel asked permission to amend their complaint so that it would include this item omitted by mistake. Defendants' counsel objected, and said that he was surprised by the proposed amendment. The court allowed the amendment. Its power to do so is beyond question. It was in furtherance of justice; the item had clearly been omitted by mistake, and the defendants could not have been surprised or prejudiced, as they had a correct bill of the account with all the items in their possession, and produced it upon the trial.

Hence there was really nothing for litigation upon the trial but the counter-claims. Neither of the counter-claims set up had any connection with the account sued for. The claim for the eighty dollars, grew out of prior deliveries of paper. It appears that some of that paper was short in weight, and that the total amount short on many deliveries amounted in value to eighty dollars. This had been conditionally allowed by plaintiffs, but upon their claim that they ought not to have allowed it, it was refunded by defendants. The defendants

claimed that they refunded or paid it to plaintiffs in conse-
quence of misrepresentations on the part of the plaintiffs.
All the facts in reference to it were submitted to the jury
under a charge which is not complained of, and they found
against the defendants, and their decision is final. I will add
here that none of the evidence as to short weights had any
reference to the account claimed in this action, but all the
evidence on that subject related to the prior accounts upon
which the claim of eighty dollars was based.

The judge presiding on the trial took from the consid-
eration of the jury the second counter-claim, on the ground
that it arose out of a different contract. He thus clearly
placed his decision upon a wrong ground. The plaintiffs'
complaint was upon contract, and defendants had the right to
set up, as a counter-claim, any causes of action existing in
their favor at the commencement of the action arising on any
other contract. But it matters not that the judge placed his
decision upon a wrong ground if his decision was right. If,
upon the whole case, the defendants were not entitled to
recover any thing upon this counter-claim, they were not enti-
tled to have it submitted to the jury. The contract and its
breach on the part of the plaintiffs were admitted. And the
only further question to be determined was one of damages.
The ordinary measure of damages in such a case is the differ-
ence between the contract-price and the market-price at the time
and place of delivery. And this is the measure to be applied
in a case where the pleading is in the ordinary form, simply
alleging the contract and breach, and claiming the damage.
But this is not the only measure of damage to be applied
where a buyer sues the seller for a breach of a contract of
sale. The buyer may have suffered special damage by the
breach which is of such a nature that, under the rules of law,
he is entitled to recover it. And in order to recover such
special damage he must allege it in his pleading, so that the
seller can be prepared to litigate it upon the trial. (Benj. on
Sales, 726; *Barrow* v. *Arnaud,* 8 Q. B., 604; *Boorman* v.
*Nash,* 9 B. & C., 145; *Crouch* v. *Great Northern Railway*

*Co.*, 11 Ex., 742; *Hoey* v. *Felton*, 11 C. B. [N. S.], 143; *Smith* v. *Thomas*, 2 Bing. [N. C.], 372; *Clark* v. *Pinney*, 7 Cow., 687; *Dana* v. *Fiedler*, 12 N. Y., 40.) In this case the defendants claim that they could not go into the market after plaintiffs' failure and buy such paper as plaintiffs were to deliver for the reason that they could find no such paper in market, and they, therefore, claimed special damages, to wit, loss of sales of the Aldine and of subscriptions to the same by reason of the injury to its reputation, because they were not able to print the frontispiece with the July number. No other special damage was alleged, and none other could, therefore, be proved. Of this alleged special damage there was no proof whatever at the trial, and hence there was no question in reference to it to be submitted to the jury. But the claim is made that proof of the special damage suffered by defendants was improperly excluded; and this claim must be briefly considered. The following questions were put to one of the defendants: "State what was the result upon your business of not furnishing that paper?" "What effect had the failure to furnish that plate upon your business?" These and similar questions were properly excluded. They were too general; not confined to the special damage alleged, and called for opinions rather than facts. Again: "State in what proportion your circulation was diminished in the month of August, 1872, from that of August of the preceding year?" "In August, 1872, was there a failure as compared with the preceding month of that year?" It did not appear that a frontispiece was ever published before. And these and similar questions were properly excluded, as it did not appear how the comparisons called for would show that the diminished circulation was due to plaintiffs' breach of contract.

Defendants' counsel offered to prove by Mr. Sutton that he caused to be printed 2,000 extra copies of the July number to accompany the plate which was to be printed on the paper thus ordered from the plaintiffs, and which they had failed to furnish, and that those copies are now in his possession, and he has been unable to use them at all; also, proposed to show

that those numbers were worth $400; also, proposed to show by him that he printed 2,500 sheets of extracts to accompany that plate and containing notices of it, and which were to accompany the July number, and that owing to the non-receipt of this paper he was unable to print the plate, and that those notices were lost, and that those were worth not less than sixty dollars; also, proposed to show by him that the freight on goods returnable, for want of the plate, was fifty dollars, and that the traveling expenses paid out for his own traveling, with reference to agents in reference to canvassing for this July number, with the plate, was $250. These offers were excluded. As to the 2,000 extra copies there was no evidence and no offer to prove that defendants were unable to use or sell the extra copies because they were unable to publish a frontispiece in the July number. The other items of damage were no part of the special damage alleged.

I have thus far, in disposing of these exceptions relating to the damages, assumed that the damages alleged and attempted to be proved were properly attributable to plaintiffs' breach of contract. But I am clearly of opinion that defendants are not entitled to this assumption. The ordinary rule of damage in such case is, as already stated, the difference between the contract-price and the market-price at the time and place of delivery When the buyer can go into market and buy the article which the seller has failed to deliver, this is the only rule, as it offers the buyer full indemnity. Special damages are allowed when this rule will not furnish full indemnity. If there is no market for the article where it is to be delivered, and it cannot be had there with reasonable diligence, and the buyer suffers damages because of the seller's failure to deliver, which is the proximate and natural consequence of such failure, such damage can be recovered. There is another pertinent rule of damages, that the party who suffers from a breach of contract must so act as to make his damages as small as he reasonably can. He must not, by inattention, want of care or inexcusable negligence, permit his damage to grow and then charge it all to the other party. The law gives him

all the redress he should have by indemnifying him for the damage which he necessarily sustains. Now, this paper was to have been delivered on the second day of June to be used for printing a frontispiece for the July number of the Aldine. There is no proof that such paper as this contract called for is not usually to be found in the market, or that it could not, in the small quantity required, be delivered in a few days by manufacturers. All defendants did was to go to dealers in paper a day or two after the second day of June and try to buy paper like that which plaintiffs were to deliver, and they could find none. It does not appear that they made any further efforts. It does not appear that they could not find paper which would answer substantially the purpose. No reason is given why they did not try more than once to find the paper. They heard plaintiffs were getting ready to deliver the paper, and on the seventh day of June they gave plaintiffs notice that they countermanded their order for the paper. Plaintiffs had the paper ready for delivery on the eighth day of June, and so notified the defendants. Hence there is no proof that the defendants could not have had the paper at least as early as the eighth day of June, and there is no proof that it would not have been just as useful for them on that day as at an earlier day. There is no proof what damage they suffered by the delay from the second to the eighth day of June. Under such circumstances the defendants could not refuse to take the paper offered and throw upon the plaintiffs all the remote subsequent damage which they claimed to have sustained. They had the right to refuse to take this paper after the second day of June. But they could not refuse to take it and then claim special damages because they could not get it.

The plaintiffs gave evidence of an interview of one of their clerks with one of the defendants as to the account sued on, in which interview the clerk testified, among other things, that the defendants promised to pay the account. Afterward the defendant was sworn, and he testified, on his direct-examination, denying that he promised to pay the account, and denying many other facts testified to by plaintiffs' clerk. On

his cross-examination he testified that he had not stated on his direct-examination all the interviews between him and plaintiffs' clerk. He was then asked, on his re-examination by his own counsel, "to tell the jury what that interview was?" The question was excluded. Having gone over the interview on his direct-examination, and somewhat on his cross-examination, whether he should be permitted again to go over the whole interview, was in the discretion of the judge. He was not asked to state any fact which he had omitted, but to give the whole interview. There was no error in excluding the question.

The exclusion of the offer of defendants to show the short weights of paper which had been delivered was not error, as they had no reference whatever to the account in controversy, and as bearing upon the first counter-claim, were wholly immaterial. As to that counter-claim, the judge charged the jury that if they found that the defendants paid the eighty dollars under the fraud and misrepresentation alleged by them, the amount should be deducted from plaintiffs' claim.

I have thus, as fully as I deem it important, considered the principal errors to which our attention has been called. I have carefully examined all the exceptions taken by defendants at the trial, and believing that none of them are well founded, the judgment must be affirmed, with costs.

All concur.

Judgment affirmed.