THOMAS L. JONES *et al.*, Respondents, *against* THE NATIONAL PRINTING COMPANY, Appellant.

(Decided March 13th, 1885).

Plaintiffs, manufacturers of paper, agreed to furnish to defendants, who were printers, a large quantity of printing paper on or before a certain

Jones v. National Printing Co

date, after they had been told by defendants' agent that they could not get the order unless they would guarantee to have the paper on or before that date, as defendants would then be out of what they were running on, and their presses would be left idle. The paper was not in fact delivered until ten days after the date agreed; and in the meantime defendants kept their presses standing idle, because, if employed on other work, two days would have been required to make them ready again, and plaintiffs gave repeated assurance that the paper might be expected every day. Defendants tried to procure paper of the kind in the City of New York, the place where delivery was to be made, but as it was of peculiar size, they were unable to find it, or any paper that might have been adapted to the purpose. In accepting the delivery by plaintiffs, defendants expressly reserved the right to claim damages by reason of the delay. *Held*, that defendants were entitled to recoup, from the price of the paper, damages for the loss arising from their presses remaining idle under the circumstances, as it must be presumed that it was in the contemplation of both parties that, if the paper was not delivered at the time agreed, defendants' presses must lie idle until the paper was delivered or obtained elsewhere, and that plaintiffs knew, also, when the contract was made, that defendants could not readily get, in the market, the kind of paper ordered; but that defendants were not entitled to damages caused by extra work or night labor done to enable them to fulfill a particular contract for printing, of which it was not shown that plaintiffs knew anything when they agreed to furnish the paper.

APPEAL from a judgment of the General Term of the City Court of New York affirming a judgment of that court entered upon the verdict of a jury rendered by direction of the court and an order denying a motion for a new trial.

The action was brought to recover a sum claimed as the balance remaining unpaid of the price of paper sold and delivered by plaintiffs to defendants.

The defendants, in their answer, pleaded an agreement for the purchase of the paper, by the terms of which plaintiffs contracted to deliver four hundred reams of said paper on or before December 1st, 1882, and for a failure to deliver said paper by that time, they agreed to pay all damages that defendants might suffer by reason of such non-delivery; and alleged that none of said paper was delivered to defendants until the 11th day of December, 1882.

The answer further alleged that, at the time said paper was to be delivered, to wit, on or before December 1st,

1882, they were under a contract to supply paper of certain specified dimensions, the same as had been ordered from plaintiffs, for the publishing of an almanac, paper of which dimensions could not be obtained in the market, although efforts were made to obtain it, in consequence of which, through plaintiffs' default, defendants' presses lay idle for a period of ten days, at a loss of a certain amount per day, and when work was resumed at the expiration of ten days, defendants were obliged to employ, and did employ, additional labor, at a further expense of a specified amount, for the whole of which defendants made a counter-claim.

The evidence given at the trial is stated in the opinion. Upon defendants' resting their case, plaintiffs moved that the counter-claim be dismissed, and a verdict directed for plaintiffs. The motion was granted, defendants excepting; and a motion by them for a new trial was denied, and judgment entered upon the verdict. From the judgment and the order denying their motion for a new trial, defendants appealed to the General Term of the City Court, by which both were affirmed; and from this decision defendants appealed to this court.

*Edward D. McCarthy*, for appellant.

*P. Q. Eckerson*, for respondent.

CHARLES P. DALY, Chief Justice.—This judgment cannot be sustained. When the contract was made, the broker told the plaintiffs that they could not get the order, unless they would guarantee to have the paper on or before the 1st of December, as the defendants then would be " out of what they were running on, and their presses would be left idle." The plaintiffs, consequently, when they agreed to furnish the paper by the 1st of December, were advised of what the effect would be if they failed to do so, and which was what took place; so that, within the rule relied upon by the court below for their judgment, the damages arising from the delay were such as may fairly be presumed to have

been in the contemplation of both parties at the time of entering into the contract (*Hobbs* v. *London & S. W. R. Co.*, Eng. L. R. 10 Q. B. 111; *Griffin* v. *Colver*, 16 N. Y. 493; *Parsons* v. *Sutton*, 66 N. Y. 98). That is, it must be presumed, upon this statement of the broker, that it was in the contemplation of both parties that damages to the defendants would be the result, if the paper was not delivered on the 1st of December; that their presses must lie idle after that time, until the paper was sent or they could elsewhere obtain it.

The judge who delivered the opinion of the General Term, says that the witnesses Colgan and McMullen both concur in stating that any notice that their presses would be idle if the paper was not sent, was given between the 1st and 11th of December, and "I think," he adds, "that a careful examination of the testimony will undoubtedly establish that such is the fact." On the contrary, an examination of the testimony shows that such was not the fact. Bonny, the broker, who made the contract, swore expressly that he said to the plaintiffs, in placing the contract, that he "could not give it to them, unless they would guarantee to have it (the paper) on December 1st, or before, as the presses would be idle."

There is nothing in the case in any way in conflict with this. McMullen says nothing in his testimony about giving any notice to the plaintiffs that the defendants' presses would be idle, and the testimony of Colgan is, that one of the plaintiffs, Skinner, called upon him between the 1st and 11th of December in relation to two letters Colgan had written to him, and that he then told Skinner that the defendants would have to hold the plaintiffs responsible for the damages occurring from the stoppage of the defendants' presses, and the first of these letters, dated December the 2d, advises the plaintiffs that the non-delivery of the paper involved "quite a heavy loss;" that the defendants had three presses lying idle in consequence of it, making a daily loss of at least $40 per diem." There was nothing in this conflicting with the broker's statement of what he

said to the plaintiffs in "placing the contract," which was previous to the contract, for it was entered into by the letter of the plaintiffs of November 16th, 1882, accepting the order, and the interview with the plaintiffs, to which Bonny testifies, was on the preceding day, November 15th, 1882. If there was anything in the evidence in any way conflicting with this testimony of Bonny, which, I think, there was not, then the question was one for the jury.

It further appeared that the kind of paper which the defendants ordered was of a peculiar size, which the defendants could not readily get in the market—a fact which, as it was not contradicted, it must be assumed that the plaintiffs knew when the contract was made, as they were agents of the mill where this kind of paper was manufactured. It was shown that the defendants tried to get it, or even paper of a larger size, which might, at some expense, have been reduced to a proper size; but it could not be found. So far, therefore, it must be assumed, on this evidence, to have been in contemplation of the parties that the defendants would be out of the paper on the 1st of December, and if none was delivered to them on or before that time, and they could not get it at once in the market, or any that could be made to answer, that they would suffer a loss until they could procure it, or the plaintiffs should deliver it, which the plaintiffs did on December 11th, ten days after the time they had stipulated to deliver it.

The court below cited the case of *Parsons* v. *Sutton* (66 N. Y. 92) as one "almost identical" with the present one, which was a case where there was a failure to deliver a quantity of paper at a stipulated time. Judge HUNT, who delivered the opinion of the court in that case, said that the ordinary measure of damages in such a case was the difference between the contract price and the market price at the time and place of delivery; but that this was not the only measure; that if there is no market for the article where it is to be delivered, and if it cannot be had there with reasonable diligence, and the buyer suffers damages because of the seller's failure to deliver, which is the proximate and

natural consequence of such failure, then, as a consequence, damages can be recovered; but that the party who suffers from a breach of contract must so act as to make his damages as small and reasonable as he can; that he must not, by inattention, want of care, or inexcusable negligence, permit his damage to grow, and then charge it all to the other party.

The special damages claimed in that case, by reason of the failure to deliver the paper, was that the defendants could not go into the market after the plaintiff's failure to deliver, for the reason that they could find no such paper in the market. In that case only a small quantity was required; and it was held that it was not sufficient evidence of due diligence on their part that they, a day or two after, went to dealers to try to buy paper like that which the plaintiffs were to deliver, and could find none; they did not, said the court, make any further efforts, and no reason was given, said the court, why they did not try more than once to find the paper; that it did not appear that they could not find paper that would answer substantially the purpose; that they heard plaintiffs were getting ready to deliver it, and, five days after the time when it was to be delivered, they countermanded their order ; that it was proved that they could have had the paper the day after they countermanded it, and that there was no proof that it would not have been just as useful to them on that day as at an earlier day; nor any proof of the damage they suffered by the delay, from the 2d to the 8th day of June; that they had a right to refuse to take the paper after the 2d of June, but could not refuse to take it, and then claim special damages because they could not get it."

So far from this case being almost identical with the present one, it is, in the most material particulars, essentially different. Here it was not a small quantity of paper that was required, but the order was for a very large quantity. The paper, here, was to be taken when it arrived, by the defendants, because their presses were then lying idle for the want of it; and because the defendants could not,

after inquiring in the City of New York, which was the place of delivery, and the one where the inquiry in the market was to be made (*Parsons* v. *Sutton, supra,* p. 98), procure paper of the kind, or even larger, that might be cut down and adapted to the purpose required. Their presses were left idle, waiting the receipt of this paper, which was expected from day to day, by assurances of the speedy arrival of it which were given in the letters of the plaintiffs, produced in evidence. The presses, under such circumstances, were not taken ·down and adapted to other uses, for the evidence was, that though they could be quickly taken down, it would take two days before the defendants could get them ready again, and they were not changed, because intelligence was sent from the plaintiffs on the 2d of December, 1882, that a large portion of the paper had been shipped, and that it would arrive by the following "Tuesday or Wednesday," which was three days after; the following Wednesday of that year being December 6th; and on that day, Wednesday, December 6th, the plaintiffs sent another letter saying that they expected it to arrive every day, and again, on December 9th, that the defendants might arrange their presses for it on the following Monday, when it did arrive.

The proof was, as I have said, that the defendants tried, but could not find such paper in the market. The judge who delivered the opinion of the court below, says: "The proof in that behalf is of the most trifling character." It does not so impress me. It is the kind of proof that would naturally be offered. Colgan, the president of the company, testified that he made inquiry for the purpose, but could not get it. If the plaintiffs thought this statement insufficient, they could have cross-examined him as to the nature of the inquiry he made; but as he was not cross-examined upon this point, it must be assumed that the plaintiffs were satisfied that he made proper inquiry, and that they did not think it necessary to inquire into the extent or nature of it, which is generally done when a doubt is entertained of the correctness of a general statement; and moreover, having

cross-examined Bonny, the broker, previously, very fully on this point, they may have been satisfied with the result in his cross-examination. Bonny testified that it was a paper that could not be got in the market. He testified expressly on the plaintiff's cross-examination that it could not be purchased in the City of New York, the place where inquiry was to be made. He said that he would not swear that there was no other paper of the kind in the market, but he looked for it, and could not find it; that it was an unusual size; that paper could be got larger, but it was not customary in the trade to buy paper a little larger than they used; that it was customary to cut paper; but he could not get any of the larger size, except book paper, that cost 2 or 3 cents more a pound; that he looked for larger paper, and went to several houses, the names of which he gave, and they did not have any larger—which does not appear to me to be evidence " of a most trifling kind," but evidence sufficient to submit the case to the jury.

The plaintiffs' counsel having asked for a dismissal of the counter-claim and that the jury render a verdict for the plaintiffs, the defendants' counsel asked to have submitted to the jury the question whether or not, before the acceptance of the goods, the defendants notified the plaintiffs that they would hold them responsible in damages for the non-delivery of the goods in time; which motion was denied; and the judge directed the jury to find a verdict for the plaintiffs for the amount claimed; to which the defendants excepted.

The judge, from the opinion he delivered upon denying the motion for a new trial, would seem to have thought that the defendants accepted the paper after the time limited by the contract without any objection, and thereby waived any claim for damages (*Duckworth* v. *Roach*, 8 Daly 159).

The judge who delivered the opinion of the General Term held, however, that it must be assumed upon the defendants' uncontradicted testimony, that the paper was received with an express reservation on the part of the defendants of their right to claim damages by reason of

the delay in delivering it, of which there can be no doubt, for the evidence upon this point was direct and uncontradicted. But the General Term held, as appears from the opinion, not only that the defendants had not shown that they had done all in their power to lessen the damages, but further, that even if every diligence on their part had been shown, the damages claimed were too remote, in any event, relying upon the case of *The British Columbia &c. Saw Mill Co.* v. *Nettleship* (Eng. L. R. 3 C. P. 330), which involved the consideration of the rule of damages upon the loss or non-delivery of goods by carriers ; and the decision in which is in no way applicable to the facts of this case. It was an action against the carriers, for the non-delivery of a box of machinery, which was a part, and a very important one, of a large quantity of machinery for a saw mill, the whole of which was packed in cases, and shipped from Liverpool to Vancouver's Island. The plaintiffs, in addition to the value of the machinery in the box, not delivered, sought to recover additional damages for the loss incurred by the stoppage of the works, during the whole time that the machinery remained useless ; which, it was decided, was not recoverable.

The court held that, although the defendant knew that the box contained part of the machinery, it was not shown that he knew that it contained the material part ; that he did not know that the whole of the machinery would be useless if any portion of it failed to arrive, or what that particular part was ; that, having no such knowledge, it could not be assumed that, when he undertook to convey the box, he intended " to become responsible for the consequences which were sought to be imposed upon him ; " that it was impossible that all the contingencies could have been contemplated by the parties at the time of entering into the contract, and it was consequently held, that the rule of damages, in that case, was the value of the machinery that had not been delivered and allowing interest upon the value of that, as the plaintiffs would have to replace it.

But the rule of damages applied to the loss or non-

delivery of the property by the carrier in that case, does not apply to the facts of this case; for here, as I have already stated, the plaintiffs were advised, when they agreed to deliver this large quantity of paper, on or before the 1st of December, that the defendants would then have used up all the paper of that kind which they had, and that their presses would be left idle, if the paper ordered was not delivered as agreed upon; that the contract would not have been given to them for this large quantity of paper unless they would guarantee the delivery of it, on or before the 1st of December; which is a very different case from the one cited. Indeed this distinction between the two is recognized by Judge WILLES in that case, who says: "The knowledge must be brought home to the party sought to be charged, under such circumstances that he must know that the person he contracts with reasonably believes that he accepts the contract with the special conditions attached to it"—which was the case here; for the plaintiffs were fully advised by the broker what the consequences would be if the paper was not delivered on or before the day that it was wanted; and they having this knowledge, therefore, brings this case within what was held in the cases of *Hadley* v. *Baxendale* (9 Exch. 354), and *Cory* v. *Thames Iron Work Co.* (Eng. L. R. 3 Q. B, 181), that if "the special circumstances under which the contract was made were communicated by the plaintiff to the defendant, and thus known to both parties, the damage resulting from the breach of such a contract would be the amount of injury which would ordinarily follow, for a breach of it, under these special circumstances, so known and communicated;" but that, on the other hand, if these special circumstances were wholly unknown to the party failing to fulfil the contract, he, at most, could only be supposed to have had in his contemplation the injury that would ordinarily arise from the breach of such a contract, because, if he had known what the special consequences would be, he could have stipulated for more time, or used greater exertions.

In the first of these cases, the plaintiffs sent a broken

shaft to the defendants, who were carriers, to be forwarded by them to a mechanical establishment where a new shaft was to be made, that might be substituted for the broken one. The carriers were told by the plaintiff's servants that the mill was stopped, and that the shaft must be sent immediately. The delivery of it was delayed by some neglect on the part of the carriers, so that the plaintiffs did not get the new shaft until some days after it should have been delivered; during which time the working of the mill was delayed, and the plaintiffs lost the profits they would otherwise have made. It was held that they could not recover them, as the special circumstances were not disclosed to the carriers, that if the broken shaft was not forwarded immediately, and there was, on their part, a delay in delivering it at the place where the new shaft was to be made from it, the working of the mill would be stopped during that delay; the converse being that, if they had been informed that their neglect and delay would delay the working of the mill, the plaintiffs could have recovered for this damage.

As the defendants were in the paper business, they may be assumed to have known what was testified to by the defendants' witnesses, that a large quantity of this paper could not have been purchased at once in the New York market, upon the happening of such a contingency, as their failure to deliver it at the time agreed upon.

There was not only the fact, as proved, of the defendants' inability to get this paper during the ten days that elapsed between the time contracted for and the time of its delivery; but on the very day after it was to be delivered— the 2d of December—assurances were sent from the plaintiffs to the defendants of its delivery in two or three days, and so on, until its actual delivery. It was a case, in my judgment, in which the defendants were entitled to recoup damages for the loss arising from their presses remaining idle under these peculiar circumstances, which was proved to be a damage to them of $40 a day. The other damages claimed, caused by extra work or night labor, to enable them to fulfill a contract which they had, for the printing of

the Shaker Almanac, were not recoverable, as it was not shown that the plaintiffs knew anything of this contract which the defendants had for printing this Almanac when the plaintiffs agreed to furnish this paper within a specified time ; and therefore, that contingency was not one which they can be assumed to have contemplated when they made the contract to deliver the paper on the 1st of December.

For the reasons above stated, the judgment, in my opinion, should be reversed, and a new trial ordered, with costs to abide event.

LARREMORE, J., concurred.

VAN HOESEN, J., concurring.—I do not mean to be understood as saying that on the new trial the evidence that was given on the first trial should be taken as conclusively establishing the defendants' right to recover $40 per day as damages. When all the facts have been elicited, it may appear that the damages were by no means so great.

Judgment reversed and new trial ordered, with costs to abide event.