LAWRENCE et al. v. PORTER et al.

(Circuit Court of Appeals, Sixth Circuit. May 28, 1894.)

No. 122.

DAMAGES—CONTRACT FOR SALE OF GOODS—REFUSAL TO DELIVER.

On a contract for. sale of goods on credit, where the seller refuses to de-
liver them, but offers to deliver for cash at a reduced price, the reduc-
tion more than equalizing the interest for the term of credit, the buyer,
not alleging inability to pay cash, but that he was unable to obtain the
goods from others than the seller at the place of delivery or other avail-
able market, cannot recover damages on the ground that he had bought
for resale at another place at an advance over the contract price and cost
of transportation, and the seller was informed of that purpose.

In Error to the Circuit Court of the United States for the Western District of Michigan.

This was an action by Ida A. Lawrence and Frank Lawrence, administrators of the estate of Lorenzo J. Bovee, deceased, against William T. Porter, Charles L. Ames, and Abel H. Frost. At the trial the court directed the jury to find for defendants. Judgment for defendants was entered on the verdict. Plaintiffs brought error.

Bundy & Travis, for plaintiffs in error.

Walpole Wood and Taggart, Knappen & Denison, for defendants in error.

Before TAFT and LURTON, Circuit Judges.

LURTON, Circuit Judge. This is an action for breach of a contract of sale brought by the buyers against the sellers for failure to deliver a large quantity of lumber according to the terms of the agreement. The lumber was to be delivered by the defendants at their mill, on vessels to be furnished by the plaintiffs, during the shipping season of 1890. As each cargo was received, the buyer was to give acceptances, payable in 90 days. After the delivery of one cargo, the defendants refused, for no sufficient reason, to deliver the remainder upon the terms of the bargain, but offered to supply the lumber needed to complete the bill at a reduction of 50 cents on each 1,000 feet, for cash on delivery over the rail of plaintiffs' vessels and at the time when delivery was required by the broken agreement. The buyers stood upon their contract, and demanded delivery upon the credit therein stipulated, and refused to take the lumber offered by the delinquent sellers on any other terms than those contained in the agreement. There was evidence tending to show that the quantity and quality of lumber contracted for, and of the dimensions designated, could not be procured at the place of delivery from others than the defendants, or at any other available market in time for shipment according to the terms of the contract; that the lumber was intended for resale at Tonawanda, N. Y.; that defendants were so informed; and that the market value of such lumber at Tonawanda, after deducting freight and hauling, was considerably above the contract price.

The evidence of the plaintiffs established that the defendants were able to comply with their proposal to deliver the lumber required by the agreement during the period fixed for delivery in the agreement. This makes it unnecessary to consider the plaintiffs' assignment of error to the ruling of the court that the burden of proof was on the plaintiffs to show that defendants could not have complied with their offer to fill out the bill for cash at a reduced price.

There was a jury and verdict for the defendants in compliance with a charge to that effect.

The case must turn upon the error assigned upon the charge of the court, the other errors assigned being immaterial.

The view of the circuit court upon the question of law upon which this case in its present attitude must turn, as expressed in the rul-

ings and charge, is well summarized in the concluding paragraph taken from the charge:

"In this case the court is of the opinion that upon the case made by the plaintiff, although he has established a breach of contract, yet the evidence shows that the defendants offered to furnish the identical articles contracted for at a price not greater than the contract price, and so no legal damage has resulted to the plaintiff in consequence of the breach of the contract, and for that reason the plaintiff is not entitled to recover. This being the judgment of the court, as a matter of law upon the facts, as the plaintiff claims them to be, there remains only the duty of rendering a verdict for the defendants."

The general rule is that, for a breach of contract to deliver goods under an executory contract of sale, the measure of recovery is the difference between the contract price and the market value at the place of delivery at the time the contract was broken. If the goods cannot be procured at the place of delivery, then resort must be had to the nearest available market. Tower Co. v. Phillips, 23 Wall. 471. The damage thus measured is the ordinary and usual damage incident to such a breach, and is recoverable under a declaration which simply sets out the contract and the breach. Plaintiffs' declaration contains the usual common-law counts. Under the practice in Michigan, the defendants demanded from the plaintiffs a bill of particulars, setting out the particular damages they had sustained. The bill was delivered, but it did not show any damages other than the general damages recoverable under a general count.

It is true that a plaintiff is not always limited to the recovery of general damages. There may be such special circumstances as will entitle him to recover special damages, "which are such as are a natural and proximate consequence of the breach, although not in general following as its immediate effects." But, if the plaintiff has sustained other damages than those which usually flow from an ordinary breach of such a contract, he must in his pleading particularize his special loss, so that the defendant may prepare himself with evidence to meet such unusual claim. Benj. Sales, § 870; Parsons v. Sutton, 66 N. Y. 96; Barrow v. Arnaud, 8 Q. B. 604. Neither the declaration nor the bill of particulars sets out or particularizes any special damages sustained by plaintiffs. They are therefore limited to "general damages," which, for such a breach as the one declared on, are measured by the difference between what they had agreed to pay and the sum for which they could have supplied themselves with lumber of the same character at the place of delivery, or, if not obtainable there, then at the nearest available market, plus any additional freight resulting from the breach. In case of such breach, the plaintiffs are entitled only to indemnity in a sum equal to the loss they have sustained as a consequence. Hence it results that if the plaintiffs are able to replace the goods by others, bought at a less or equal price at the place of delivery, or other near and available market, they have sustained no loss, and are entitled at best to nothing more than nominal damages. Neither the declaration nor bill of particulars alleges any inability to pay cash, as demanded by the defendants. We do not, therefore, consider whether special damages might not, under some circum-

stances, be recovered, which were sustained by reason of the inability of plaintiffs to pay cash for lumber to replace that which defendants had contracted to sell them on credit. It follows that if plaintiffs were able to buy, and did not, they cannot throw upon the defendants any special losses incident to their own failure to mitigate the injury as far as they reasonably could. Sedg. Dam. (8th Ed.) § 741; Marsh v. McPherson, 105 U. S. 709; Warren v. Stoddart, Id. 224.

The ground upon which the defendants refused to carry out the sale was ostensibly their unwillingness to extend to the plaintiffs the credit of 90 days provided for in the agreement of sale. They have not endeavored to show that there were any circumstances which justified this breach of the agreement. Credit is often a material element in a contract of sale, whereby the buyer is enabled to operate upon the capital of the seller. Credit extended without interest is, in effect, a sale at the stipulated price less the interest for the period of credit. The damage for a breach of contract to pay money at a particular date is the lawful rate of interest for the period of default, unless some other penalty is imposed by the agreement. So it would seem that if the buyer, in order to supply himself with the articles which the seller was obligated to sell, is compelled to buy from another, and to pay cash, one element of recovery for the breach would be interest upon his purchase for the period of credit. It is the well-settled duty of the buyer, when the seller refuses to deliver the goods contracted for, to do nothing to aggravate his injury. Indeed, he must do all that he reasonably can to mitigate the loss. If the buyer could have supplied himself with goods of like kind, at the place of delivery or other available market, at the time the contract was broken, and neglected to do so, whereby he suffered special damages by reason of the breach, he will not be suffered to recompense himself for such special damage, for the reason that to that extent he has needlessly aggravated the loss. The contention of the plaintiffs is that they could not supply themselves at the time the contract was broken with lumber of the qualities and sizes mentioned in their contract, either at the place of delivery or at any other available market; that they were not required to buy from the defendants, who were already in default; that to have bought from them would operate both to encourage breaches of contracts, and would have been a waiver of all other right of recovery for the breach of their agreement; that to have accepted the proposal of the defendants to supply them for cash at the reduced price would simply have been to substitute one contract for another, thereby enabling defendants to escape all liability for a deliberate and indefensible violation of the bargain. They therefore insist that the measure of damage was the difference between the contract price and the market value at Tonawanda, N. Y., less freights to that point; the evidence showing that the lumber was bought for resale at Tonawanda, and that defendants were informed of that purpose.

For a breach of contract of sale, the law imposes no damages by way of punishment. The innocent party is simply entitled to re-

cover his real loss. If the market value is less than the contract price, the buyer has sustained no loss. This is axiomatic, and needs no citation of authority. If the plaintiffs could have bought at East Jordan, or at any other convenient and available market, at the time of the breach, lumber of like kinds, at the same price or a less price, it would be clear that they would have sustained no general damages. If they refused to avail themselves of such opportunity, and thereby sustained special and unusual loss, by reason of not having lumber of the kinds called for by the contract, or by being deprived of a profit resulting from a resale at Tonawanda, they could not recover such special damage, for such damage might have been avoided by replacing the undelivered lumber by other of like kinds. The fact that they could only buy from the defendants does not affect the duty of plaintiffs to minimize their loss as far as they reasonably could. The offer to sell for cash at a reduced price more than equalized the interest for 90 days, which was the value of credit. There seems to be no insurmountable objection in thus permitting a delinquent contractor to minimize his loss. The obligation on the buyer to mitigate his loss, by reason of the seller's refusal to carry out such a sale, is not relaxed because the delinquent seller affords the only opportunity for such reduction of the buyer's damage. Warren v. Stoddart, 105 U. S. 224; Deere v. Lewis, 51 Ill. 254.

In Warren v. Stoddart, above cited, the essential facts were these: Stoddart & Co. were publishers of an edition of the Encyclopaedia Britannica. It was a book sold only by subscription. Certain territory was assigned to the plaintiff, in which he was to have the exclusive right to sell the book on subscription. He was to have the book on a credit of 30 days, thus enabling him to deliver it to his subscribers, and obtain the means to make his own payments. Warren obtained a large number of subscriptions to Stoddart's publication. After delivering a few numbers, he ceased to canvass for the Stoddart publication, and became a canvasser for a rival edition. Thereupon Stoddart refused to extend further credit to Warren, and demanded cash on all his orders to supply his subscribers for the Stoddart edition. Warren demanded credit, and refused to pay cash. Being unable to get the Stoddart edition from any other source, he, at great expense to himself, substituted the Scotch, or rival edition, with which he furnished his subscribers for Stoddart's edition. For the loss thus sustained he sued. After discussing the effect upon Warren's contract, because of his ceasing to canvass for Stoddart and taking up a rival work, the court proceeded to decide the case upon the second ground of defense presented, saying:

"But, even conceding that the provision referred to remained in force after Warren had declined to go on under the contract, it does not follow that, upon the refusal of Stoddart to give Warren a credit of thirty days upon the books, the latter could obtain a cancellation of the orders he had taken for Stoddart's reprint, and substitute orders for the Scotch edition, and charge the expense of so doing to Stoddart. The claim that, upon a simple refusal of Stoddart to allow him a thirty-days credit upon the books as he ordered them, he could go on and substitute other orders for another book, and

charge Stoddart with the expense of substitution, amounting to $30,000, is, to say the least, a remarkable one. The damage sustained by Warren because he did not get the thirty-days credit which he thinks he was entitled to is not to be measured in that way. The rule is that where a party is entitled to the benefit of a contract, and can save himself from a loss arising from a breach of it at a trifling expense or with reasonable exertions, it is his duty to do it, and he can charge the delinquent with such damages only as with reasonable endeavors and expense he could not prevent. Wicker v. Hoppock, 6 Wall. 94; Miller v. Mariner's Church, 7 Me. 51; Russell v. Butterfield, 21 Wend. 300; U. S. v. Burnham, 1 Mason, 57, Fed. Cas. No. 14,690; Taylor v. Read, 4 Paige, 561. The course pursued by Warren was not necessary to his own protection. He might have paid Stoddart cash for the books required to fill his orders, or have allowed Stoddart to fill the orders and divide the profits of the business between them, on equitable terms. The law required him to take that course by which he could secure himself with the least damage to the defendant in error. Instead of this, he unnecessarily destroys a valuable interest of Stoddart in the business in which they were jointly engaged, and then seeks to charge him with the great expense and damage which he brought on himself in so doing. If Stoddart violated his contract with Warren in refusing to fill his orders except for cash, the measure of Warren's damages would be the interest for thirty days on the amount of cash paid on his orders. As no proof was given to show that Warren had ever paid cash for any books ordered by him, he would only be entitled, in any view of the case, to nominal damages."

The opinion in Warren v. Stoddart rests upon the theory that the buyer does not surrender or yield any right of action he may have for the breach of contract. It rests wholly upon the duty of mitigating the loss by replacing the goods by others, if they are obtainable by reasonable exertion. If this duty be such as to require him to buy from the delinquent seller; if the article can be obtained only from him, or because he offers it cheaper than it can be obtained from others, such a purchase from the seller is not the abandonment of the original contract by the substitution of another, nor would the purchase operate to the seller's advantage, save in so far as the damage resulting from his bad faith was thereby reduced. If the seller offers to sell for cash at a reduced price, or to sell for a less price than the market price, though in excess of the contract price, with the condition that it should operate as a waiver of the original contract, or of any right of action for its breach, then the buyer would not be obligated to treat with the seller, nor would the seller's offer, if rejected, operate as a reduction of damages.

The case of Deere v. Lewis, cited above, was a case much like the one under consideration. The goods could be procured only from the defendant, who offered the goods for cash at 5 per cent. less than the contract price. It was held that plaintiff could recover only nominal damages, inasmuch as he could have bought the goods for less than the contract price from the delinquent seller.

The cases of Havemyer v. Cunningham, 35 Barb. 515, and Manufacturing Co. v. Randall (Iowa) 17 N. W. 507, have been cited as sustaining a different result. The first case rested upon a state of facts very unlike those here involved. The other seems to have gone off upon the apprehension that, if the buyer supplied himself by a purchase from the delinquent seller, he thereby abandoned his contract, and substituted a new agreement in place of the

broken bargain. That apprehension seems unjustified. But, however that may be, the case of Warren v. Stoddart is controlling. The offer after the breach by the defendants to sell the lumber necessary to complete the contract was not coupled with any condition operating as an abandonment of the contract, nor as a waiver of any right of action for damages for the breach.

The question as to whether there was error in not directing a verdict for nominal damages was not presented by any exception in the circuit court, nor raised by any assignment of error here. We do not, therefore, consider it.

Judgment affirmed.