## ADA E. COREY *vs.* GEORGE R. WOODIN.

Suffolk.    March 14, 1907. — May 15, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Contract*, Construction, Rescission.    *Waiver*.    *Practice, Civil*, Refusal to order verdict, Exceptions.

In an action of contract by a woman to recover $1,250 as the price of five thousand shares of a certain corporation which it was alleged that the defendant had agreed to buy back from the plaintiff, the plaintiff testified that the defendant said to her, " I have five thousand shares here, and if you will take it, if it does not pay you a dividend within a year I will pay you back the money with interest at six per cent," and that she took the shares and paid the defendant $1,250, and that a certificate for the shares was delivered to her.    The plaintiff further testified that more than a year later she signed at the request of the defendant the following instrument in writing : " I, C., am the owner of certificate No. 368, 5000 shares R. Company's capital stock.    I do authorize W. [the defendant] to dispose of said stock in one block or in any way that it is possible for said W.

to dispose of said stock. Said stock to net me not less than 25c. per share. All commissions and other costs for marketing said shares to be paid by said W., providing said W. succeeds in disposing of said shares. I do hereby agree to give said W. an option on said shares of stock for four months from this date," that the plaintiff delivered to the defendant this instrument and also the certificate for the shares and the defendant gave her a receipt for the certificate containing the statement " Said stock to be disposed of for said C. See contract dated this date." No dividend had been paid on the stock. The defendant contended that by signing the instrument in writing the plaintiff had elected to keep the shares as her own property, and asked the presiding judge to order a verdict for him, which the judge refused to do, and the jury returned a verdict for the plaintiff. *Held*, that the plaintiff by giving the defendant express authority to dispose of the shares which stood in her name did not waive necessarily her right to assert that as between her and the defendant the shares should be treated as his, that the plaintiff's rights under the previous oral agreement after the finding of the jury must be taken to have vested, and that the new agreement, although reduced to writing, did not show as matter of law that the previous oral agreement was rescinded or was merged in a new bargain, and therefore that the refusal of the judge to order a verdict for the defendant was right.

On an exception to a refusal of a presiding judge to order a verdict for a defendant, the ruling of the judge will be sustained if there is any ground on which the plaintiff's case should have been submitted to the jury, although such ground is not the one on which the presiding judge submitted it.

CONTRACT OR TORT, with a first count alleging false and fraudulent representations of the defendant on which the plaintiff relied to her loss, and a second count for money had and received to the plaintiff's use, stated in a bill of particulars to be $1,250, with interest from February 10, 1903, to the date of the writ, namely $156, making $1,406. Writ in the Municipal Court of the City of Boston dated March 3, 1905.

On appeal to the Superior Court the case was tried before *Stevens*, J. The plaintiff testified that shortly before February 10, 1903, the defendant, at two or three interviews, solicited her to buy five thousand shares of stock of the Richmond Group Gold Mines Company, a corporation; that he made certain representations in relation to the mine, its history and prospects, and in relation to those who had invested in it; that on this tenth day of February the defendant said, " I have five thousand shares here, and if you will take it, if it does not pay you a dividend within a year I will pay you back the money with interest at six per cent," and with that she took it and paid him $250 in cash and gave him a check for $1,000, and a certificate for the five thousand shares of the corporation was issued

to her numbered 368 and certifying "that Ada E. Corey is the owner of five thousand shares of the capital stock of the Richmond Group Gold Mines Company."

On cross-examination she testified as follows: "Q. These other considerations that he told you about, they did not operate upon your mind and it was not until he told you this last thing that you agreed to take it? A. No, I made up my mind I would not buy anything more until he said he would refund the money with interest if I would take that five thousand and on the strength of that I took it. — Q. Down to that point you had made up your mind not to take the stock? A. Yes. — Q. At that point you made up your mind you would take it? A. Yes, sir. — Q. Solely in consequence of what he then said? A. Yes."

The judge thereupon allowed the plaintiff to amend her declaration, and she filed a count in contract, declaring upon the special contract as testified to above, to recover the price of the shares, the certificate for which she had transferred and delivered to the defendant. The trial thereafter proceeded upon the amended declaration and the general denial contained in the answer to the original declaration, which was treated as applying to such new count. No question was raised as to the admissibility of any of the evidence under the pleadings.

The plaintiff then was asked whether she had stated the entire story in regard to the stock and answered that she had. She then was shown a paper, of which the following is a copy:

"Boston, June 1, 1904.

"I, Ada E. Corey, am the owner of certificate No. 368, 5000 shares Richmond Group of Gold Mines Company's capital stock. I do authorize George R. Woodin to dispose of said stock in one block or in any way that it is possible for said Woodin to dispose of said stock. Said stock to net me not less than 25c. per share. All commissions and other costs for marketing said shares to be paid by said Woodin, providing said Woodin succeeds in disposing of said shares.

"I do hereby agree to give said Woodin an option on said shares of stock for four months from this date.

"Ada E. Corey."

She was asked whether that paper was signed by her and delivered to the defendant, and she replied that it was; she was asked whether she delivered that in good faith, and replied that she did. The paper thereupon was put in evidence by the defendant, and both sides rested.

The defendant then asked the judge to rule that the action could not be maintained as a matter of contract, because the plaintiff had abandoned the contract of February 10, 1903, by authorizing the defendant to sell the stock for her and giving him an option to purchase it under the paper of June 1, 1904, more than a year after the contract.

The judge, in the exercise of his discretion, recalled the plaintiff and stated to the counsel for the plaintiff that he might examine her as to what was said in regard to the paper and also the receipt of the same date, which she testified that the defendant gave her and which was as follows:

" Boston, June 1, 1904.

" Received from Miss Ada E. Corey, one certificate No. 368, 5000 shares of Richmond Group of Gold Mines Company's capital stock.

" Said stock to be disposed of for said Corey. See contract dated this date."

She thereupon testified, " He told me to bring the certificate in to him and I carried it in to him and he gave me a receipt for it, and said he could not dispose of a block of five thousand shares and he would have to break it, would have to sell them in small lots, and I asked him what all this talk was about and he said he could not dispose of them without my signature on this (meaning the paper of June 1, 1904). He said he could not sell my stock with my signature on it without giving him the right to dispose of it, as it was treasury stock; that he could not pay me the money then but would have to pay it to me in small lots. I told him I did not want it in driblets, and that he had agreed to pay me the whole of my money at the expiration of a year. He said that what that paper was for was so he could dispose of treasury stock, that he could not dispose of it unless I signed that paper. I suppose I did read it but I do not remember it, but I suppose I did, because I asked him what it was worded

like that for, and he said he could not dispose of it unless he broke it. And I asked him what difference it made whether it was treasury stock or any other kind of stock. I took the stock to him at the time the paper was signed. I told him it did not make any difference to me how he got the money, but that he had agreed to pay me back my money with interest. He said something about his man going out to sell the stock and it would take days before he could get me any money but that he would send it to me while I was away. I got no money while I was away. I told him the stock was not mine, it was his, it did not belong to me. I never made any demand on him for money after that. I have received no communication from him since."

On cross-examination she said she did not know what he meant by treasury stock and he did not say; never knew what it was; that he "told me it was treasury stock when he sold it to me. I owned this stock for a period of a year, it belonged to me; that, whatever treasury stock may have been, it ceased to be treasury stock and had become my property when I bought and paid for it, and when I undertook to turn it back to him I then understood it became his stock and not mine any more. I supposed it was still treasury stock at that time because he said he could not dispose of it because it was treasury stock. I expected him to take it back, it was his. As between me and him I was not the owner of the stock but that it was his." That that was about June 1, 1904. That just before this "I told him the year was up and he told me to bring in the certificate. It was just before the year was up." That it was about the time the paper was signed; that she was sure it was in the spring, it was not in the winter.

Both sides again having rested the counsel for the defendant asked the judge to direct a verdict for the defendant. The judge refused to do so, and the defendant excepted. The counsel for the defendant declined to go to the jury and stated that he would stand upon his exception.

The judge in substance instructed the jury that the instrument of June 1, 1904, was inconsistent with the plaintiff's claim under the original contract and was a waiver of any rights that the plaintiff might have had under the original contract, unless she was induced by the fraud of the defendant to sign the in-

strument not knowing what it was that she signed, concluding as follows : "So, Gentlemen, the real issue in this case is, whether this agreement of June 1, 1904, was signed by her through fraudulent representations made by the defendant, and your verdict will be one way or the other as you find that fact."

The jury returned a verdict for the plaintiff in the sum of $1,492.49; and the defendant alleged exceptions.

The case was submitted on briefs.

*S. H. Tyng*, for the defendant.

*W. J. Miller*, *W. P. Kelley & G. E. Gardner*, for the plaintiff.

SHELDON, J. The only question raised by these exceptions is whether a verdict should have been ordered for the defendant as matter of law. His contention is that, even if the jury found that the contract on which the plaintiff relied was proved, and that he had agreed to pay her, in the contingency which has occurred, $1,250 for the stock in question, yet she could not maintain her action upon his promise because, by signing the paper of June 1, she had elected to keep the stock as her own property. But, apart from the question whether she was induced to sign this new agreement by the fraud of the defendant, the majority of the court are of opinion that her execution of it was not necessarily a waiver of her rights under the previous oral agreement. Her right of action upon that must be taken, after the finding of the jury, to have become vested. But the certificate of stock was still in her name, and something must be done to transfer it to the defendant. Her giving him express authority to dispose of, that is, to sell and transfer, the stock which stood in her name was not of itself a waiver of her right to contend that, as between him and her, the stock should be treated as his. And it is significant that it was expressly stipulated that he should sell it for enough to net her the exact amount to which she was entitled under the old oral contract. Nor does the agreement to give the defendant an option on the stock for four months import as matter of law more than a recognition of the fact that the legal title was in her, that his authority to sell should not prevent him from taking the stock, and that she would not bring suit for four months. That time had more than

expired when she brought her writ. Such a new agreement, though reduced to writing, does not necessarily as matter of law show that a former oral agreement under which rights already have vested is rescinded or merged in the new bargain. *Edgar* v. *Joseph Breck & Sons Corp.* 172 Mass. 581, 583, and cases there cited. Accordingly the defendant's request was rightly refused.

It may be said that the case was not submitted to the jury upon the ground upon which we rest our decision. That is true ; but the defendant is not concerned with this. He declined to go to the jury at all, choosing to stand wholly upon his contention that he was entitled to have a verdict ordered in his favor. He must fail if there was any ground upon which the jury could find against him.

*Exceptions overruled.*