## MORRILL v. McINNES.

(District Court, E. D. Pennsylvania. June 29, 1920.)

### No. 4788.

1. **Sales ⊕⇒174—Breach of condition precedent justifying refusal to deliver.**

Under a series of contracts for sale of iron by defendant to plaintiff, to be delivered on board ship for foreign shipment, which required plaintiff to establish an irrevocable credit against which defendant could draw for the price on presenting ocean bills of lading and invoices, where the master of a ship refused to issue bills of lading without prepayment of the freight, which defendant was compelled to pay and in consequence the credit was insufficient, defendant *held* justified in refusing to make further deliveries unless plaintiff made the credit sufficient to cover both price and freight, or otherwise provided for payment of the freight.

2. **Sales ⊕⇒62—Contract to assure payment for all not met by assurance of payment for part.**

A contract to assure a seller of payment for all he is to deliver is not fulfilled by assurance of payment for part only.

At Law. Action by Thomas Morrill against Charles E. McInnes, individually and trading as Charles E. McInnes & Co. On motion by plaintiff for new trial. Denied.

Biddle, Paul & Jayne, of Philadelphia, Pa., for plaintiff.

Hubert J. Horan, Jr., and Owen J. Roberts, both of Philadelphia, Pa. (Walter S. McInnes, of Philadelphia, Pa., of counsel), for defendant.

DICKINSON, District Judge. [1] The action was for a breach of a contract to deliver. The defendant was called upon to have manufactured, or in some way to provide himself with, the subject-matter of the contract and deliver f. a. s. for foreign shipment. There were a number of transactions—seven in all—and six contracts relating to them. The contracts varied in some of their details, but there was a substantial family likeness, and to bring the consideration of the merits of the cause within manageable limits it was agreed that the variations might be ignored and one contract treated as typical of all. This typical contract was that the plaintiff should provide an irrevocable confirmed credit to assure to plaintiff payment for what he delivered and a vessel to which the delivery was to be made. The defendant was to deliver f. a. s. receiving an ocean bill of lading, on which and his invoice he was to receive payment from the bank or express company with whom the credit had been established.

When the contract came to be performed, this obstacle was encountered: When the plaintiff had arranged with the bank or express company to establish a credit (even if he did so), the master of the ship demanded prepayment of freight before he would issue an ocean bill of lading. Without this the defendant could not get his money. This forced him to advance the freight, and, as a consequence, the credit was insufficient. The defendant complained of this, and asked the plaintiff to either arrange with the ship, so that the ocean bill of lading might issue without the payment of freight, or to establish a credit

which would cover both invoice and freight. No satisfactory arrangement was made, and finally the defendant refused to make deliveries.

The plaintiff then brought suit; the defense being a denial of the obligation to deliver, unless the contractual assurance of payment had been given. The court charged the jury that plaintiff could not recover for a failure of the defendant to perform, unless the precedent conditions of such performance had been met by the plaintiff. One was the establishment of the required credit. Some of the contracts called for "confirmed irrevocable credits"; some for "credits as usual."

The first point now made by the plaintiff is that these "usual" credits meant the kind of credits which were established in the transactions which the parties had previously had, and that the trial judge had ignored the significance of such transactions. However this may be, no appellate use can be made of the point in face of the stipulation of the parties that the contracts might be treated as if they all read "irrevocable confirmed credits." (See charge of the court.)

The next complaint is that the trial judge erred in instructing the jury that the plaintiff could not complain of the refusal of the defendant to deliver, unless these credits had been established, and that defendant could not be compelled to sell on the unsupported credit of the plaintiff, not having contracted to so sell. The complaint, as we understand it, is not of the legal doctrine laid down, but that the court had the wrong concept of what the plaintiff had done and failed to do. This question of performance was treated in the charge as a question of fact, and it was left to the jury to determine. In this we as yet see no error.

The third complaint is to the part of the charge relating to ocean freights. Here again the complaint is, not to the construction given by the court to this part of the contract, which was that the plaintiff was bound to provide the ship and pay the freight, or, at least, that the defendant was not bound to pay the freight, but the plaintiff was not required to either provide the ship or pay the freight until defendant was ready to deliver. No such complaint is made, because the trial judge in this accepted the plaintiff's reading of the contract. The complaint is that the charge (although not so intended) conveyed to the jury the thought that the plaintiff was bound to establish a credit to take care both of the invoice and the freight as soon as the order for the goods was given.

We have attentively reread the charge with this complaint in mind, but do not find it to be justified. It is true that at first the assurance of the payment of invoice and freight are treated as one; but the jury were expressly and several times told that this was merely to present the general thought, which was subject to qualification, and the qualification was subsequently made by distinguishing between the invoice and the freight payment with respect to the time when provision was required to be made for the payment of each.

The fourth complaint is that the defendant assumed to cancel the contract, not because the plaintiff had refused to provide in advance for the payment of the invoice, but because he would not provide in advance for the payment of all the freight, and that the jury

should have been told such cancellation was unjustified in fact and law. This complaint is well founded only in a sense. The jury were told in effect that failure to provide for payment of the invoice justified a refusal to deliver, and that the plaintiff was also bound to provide a ship from which, on delivery, the defendant could get an ocean bill of lading, and, if this was necessary in order to have the bill of lading, to arrange for or prepay the freight. The jury were not told that defendant could demand a credit covering freight, but that he had agreed that plaintiff might provide in this way for the freight. They were further told that the defendant could refuse to deliver only if the plaintiff had refused to give the assurance of payment called for by the contract, and even if thus justified in refusing to deliver, if he refused on other grounds, he was held to the grounds he had selected, and must stand or fall with them. We see no error in this of which the plaintiff can rightfully complain.

.[2] The fifth complaint is with respect to the "indivisibility" of the iron contracts. The question is whether, under a contract to sell and deliver 1,000 tons of iron, the vendee can demand delivery of 500 tons, or whether the vendor is supported in his refusal to deliver part by saying, Take all for which you contracted, or get none. The real question is one even more easily answered. It is whether a contract to assure payment of what is to be delivered under a contract which calls for a deposit of $10,000 is met by a deposit of $5,000. We adhere to the view expressed to the jury that a contract to assure to the defendant payment for all he is to deliver is not fulfilled by assuring payment of part.

The final complaint is of that part of the charge which was directed to the measure of damages. The effort made was to distinguish between the obligation, which did not rest upon the plaintiff, to accept of the substitution of a new contract with a defaulter for the old contract on which he had defaulted, and the obligation, which did rest upon him, to supply himself with that for which the contract called at the lowest price for which he could secure it. This distinction may not have been happily expressed, but we think the jury grasped it. The industry of counsel for the defendant has brought to the support of the charge the case of Lawrence v. Porter, 63 Fed. 62, 11 C. C. A. 27, 26 L. R. A. 167, in which the same distinction is made.

The instant case was as well and as fairly tried as any case could possibly be. However much the counsel for plaintiff may deplore the loss of the verdict, it was beyond cavil through no fault which could be attributed to him. He has presented the appellate features of his case with the same conspicuous fairness and ability with which the case was tried, but the court remains unconvinced of error.

The motion for a new trial is discharged, and leave is granted to enter judgment, with costs, on the verdict; the judgment, for definiteness of date, to date from such entry.