**UNITED STATES NAVIGATION CO., Inc.,
v. BLACK DIAMOND LINES, Inc.
Nos. 34, 35.**

Circuit Court of Appeals, Second Circuit.
Jan. 5, 1942.

Writ of Certiorari Denied Mar. 9, 1942.
See 62 S.Ct. 805, 86 L.Ed. ——.

Before L. HAND, AUGUSTUS N. HAND, and C. E. CLARK, Circuit Judges.

Carpenter & Stevenson, of New York City (John Tilney Carpenter, of New York City, of counsel), for appellant.

Hunt, Hill & Betts, of New York City (John W. Crandall, of New York City, of counsel), for appellee.

AUGUSTUS N. HAND, Circuit Judge.

The charter hire was at the rate of $26,000 per month and each vessel made one voyage to South Africa and returned, the Black Hawk to Norfolk, Va., and the Black Tern to Baltimore, Maryland. The voyage of the first vessel took from February 15, 1940, to May 2, and the voyage of the second from March 7 to June 15. Concededly there was opportunity under the original oral charters for two round voyages, only one of which libellant was granted under the terms of the written charterparties that were imposed upon the latter against its will. The exceptions to the libels on the ground that each failed to state a cause of action involved the assumption of the truth of the facts stated in them. Under this assumption it seems probable that the respondent was anxious to shorten the length of the charters and that the new charters it forced upon the libellant were only signed by the latter because no other course was open if it was to have any use of the vessels, and it was under a duty to mitigate damages.

The District Judge held that in the execution of the charterparties the libellant "abandoned its rights under the oral contract as signed," sustained the exceptions and dismissed each libel. While the situation is not free from doubt, upon the record before us this result seems inequitable and we think the decrees may be and ought to be reversed and the causes should proceed to issue and trial.

In our opinion the signed charterparties were without consideration and even if, because of the provisions of the New York Statute, Section 33(2) of the Personal Property Law, Consol. Laws, c. 41, no consideration was necessary, they were not a substitute for the prior oral charters because they only covered a part of the subject-matter embraced in the original agreements and the latter remained in effect to the extent that they were not included in the written charters. The notifications which accompanied the latter were addressed by the appellant to the appellee and read as follows:

"In view of your January 15th letter and your other statements that you will not let us have the use of these vessels when their current charters expire unless we sign the charter parties in the form demanded by you—which do not correctly state the periods and trading limits which we agreed upon—we return them herewith duly signed by us, under protest, and reserve our rights in the premises."

The documents that were signed differed from the oral charters only in limiting the term to a single round voyage, whereas the oral ones gave the libellant the option of obtaining a term of five months which would enable it to perform two voyages. Under the oral agreements the libellant was only bound to take the vessels for a minimum of two months and had the option to take them for three months longer. The withdrawal in the written charters of the chance that the libellant might exercise the option was no consideration on the appellee's part for that possibility was not a right which the owner possessed. It may be said that there was a consideration arising out of implied agreements to rescind the oral charterparties and to substitute the written charters therefor. But we think that the written charters did not wipe out or rescind the oral agreements. They only embodied promises to carry them out to the extent of one voyage for which the appellee was already bound, instead of for two voyages and pro tanto were wholly consistent with the oral charters. In view of the appellant's notices of protest and reservation of rights which accompanied the signature of the written charters its seems unreasonable to say that the execution of the charters signified an abandonment of the option for two voyages granted by the oral agreements or effected more than an agreement to accept a charter for a single voyage and a promise to pay hire pro tanto for what was the minimum requirement of the earlier agreement.

It is argued that United States ex rel. International Contracting Co. v. Lamont, 155 U.S. 303, 15 S.Ct. 97, 39 L.Ed. 160, is contrary to our analysis of the facts in the causes under consideration. There, however, the question of failure of consideration does not seem to have been argued and it was not discussed in the opinion of the court. Moreover, the second contract covered the entire subject-matter. In Parish v. United States, 8 Wall. 489, 19 L.Ed. 472, which is also relied on by appellee, consideration was not discussed. It was also doubtful in each case whether the first contract was binding at any time. In MacLaren v. Windram Mfg. Co., 287 Mass. 221, 191 N.E. 347, an oral contract was treated as still existing so long as a subsequent written contract was not inconsistent with its terms, and recovery was allowed on the oral agreement. See, also, Edgar v. Joseph Breck & Sons Corp., 172 Mass. 581, 583, 52 N.E. 1083; Corey v. Woodin, 195 Mass. 464, 81 N.E. 260; Endriss v. Belle Isle Ice Co., 49 Mich. 279, 13 N.W. 590. For the foregoing reasons, it seems apparent that the signed charters were not substitutions for the oral agreements and were not intended as rescissions thereof, and that consideration therefor was lacking. We add that the protest and reservation of rights by the appellant demonstrate that there was no complete integration of the agreement of the parties in the written charters. Restatement, Contracts § 237.

It may be further contended that Section 33(2) of the New York Personal Property Law applied and consideration was therefore unnecessary to support the written charters. The statute reads as follows:

"2. An agreement hereafter made to change or modify, or to discharge in whole or in part, any contract, obligation, or lease, * * * shall not be invalid because of the absence of consideration, provided that the agreement changing, modifying or discharging such contract, obligation, lease, * * * shall be in writing and signed by

the party against whom it is sought to enforce the change, modification or discharge."

This statute, in our opinion, does not affect the situation. Even though the written charters may have been valid irrespective of any consideration it does not follow that the oral contracts were superseded. The written charters were only agreements to carry out part of the appellee's obligations already entered into and so far as performed would have been in partial execution of the earlier contracts. Those contracts were at least not wholly rescinded. Appellant's notices accompanying the written charters contained statements to the contrary and plainly indicated a purpose to reserve all rights under the prior oral agreements. Unless there was a rescission or an agreement to rescind implicit in the signed charters, which we have already held was not the case, the New York statute would not invalidate the oral charters. The statute at most validates the written contracts but they were not received in substitution for the oral ones and effected at most a pro tanto rescission of the latter. We think the suits to recover for breach of the oral charters ought to stand and that the written charters should be treated as a proper attempt to mitigate damages. In a similar situation the Court of Appeals for the Sixth Circuit, consisting of Taft and Lurton, JJ., held that it was the duty of one whose contract was broken to mitigate damages by accepting an arrangement on less favorable terms, while retaining his rights to recover damages for the original breach. Lawrence v. Porter, 63 F. 62, 26 L.R.A. 167.

We hold that the oral charters were not superseded and that the libellant properly joined in the written charters as a means of mitigating damages. The portions of the earlier oral agreements which were not inconsistent with the later written charterparties were not rescinded. Restatement, Contracts § 408; Williston Contracts, 1936 Ed., 1826. Accordingly the decrees of the District Court are reversed with costs and the exceptions to the libels are overruled with leave to the appellee to join issue and proceed to trial if it be so advised.

L. HAND, Circuit Judge (dissenting).

The first question is whether the charterer did in fact accept the charterparties: its answer depends upon the proper construction of the charterer's letter which accompanied the return of the signed documents. That was subject to two possible interpretations: (1) that the signing and delivering of the charterparties were not to be understood as an acceptance of the owner's offer, but that the parties' rights were to be judged by the oral contract alone; or (2) that while the charterer did indeed accept the offer because it was forced to, it claimed that the oral contract would continue to give it those rights of which the owner had despoiled it. It seems to me that the second interpretation must be the right one. The situation is the not uncommon one in which a party to a contract actually, but unwillingly, consents; the charterer knew it could not get even one voyage without consenting and consent it did. Reserving its rights under the oral contract did not withdraw that consent; it merely expressed the belief that the law would not sanction the supposed wrong. Its position was like that of a man who signs a contract with the reservation of a right to repudiate it because he had been forced to do so through his poverty; his defense can rest only upon the validity of the excuse and is not aided by the reservation.

I will assume that there was no consideration for the charter-parties; I read the oral charter—as the appellee itself appears to—as having been for two months with an option to the charterer of three months more; and since apparently one voyage took about two months, the effect of the change was merely to cut off the option. It so happens, however, that this is immaterial, if the amendment to subdivision two of § 33 of the Personal Property Law of New York applies to maritime contracts like these. That provides that an agreement which modifies a pre-existing contract shall not be invalid because it lacks consideration, provided it is in writing and is signed by the party against whom the change is to be enforced; and these charter-parties were signed in New York and certainly "modified a pre-existing contract." The question has not been argued whether the statute should not apply to maritime contracts on the ground that, if so, it would unduly impinge upon one of "the essential features of an exclusive federal jurisdiction" (Just v. Chambers, 312 U.S. 383, 392, 61 S.Ct. 687, 693, 85 L.Ed. 903) but, although that question has usually arisen over torts, it can also come up over maritime contracts. Red Cross Line v. Atlantic Fruit Company, 264 U.S. 109, 44 S.Ct. 274, 68 L.Ed. 582. It is a peculiarly baffling one for the test of what is "essen-

tial" to "uniformity" and what is not, has been left altogether at large; and the latest declaration of the Supreme Court (Parker v. Motor Boat Sales, 314 U.S. ——, 62 S.Ct. 221, 86 L.Ed. ——) seems to betoken a change. Be that as it may, I find it difficult to believe that this local variant of the doctrine of consideration will disturb the "essentials" of admiralty jurisdiction any more than for instance a state statute imposing maritime liens. The Lottawanna, 21 Wall. 558, 581, 22 L.Ed. 654. A dissenting opinion is not the place for an exhaustive examination of such a question—especially when it has not been argued—and I shall content myself merely with saying tentatively that, so far as I can now see, the statute should be held to cover charter-parties. For that reason, I think that the district court was right, though it is a rather curious irony that a statute, designed generally to avoid injustice, should in this instance operate so harshly.