**LODGE NO. 12 OF DISTRICT 37, INTERNATIONAL ASSOC. OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, Plaintiff,**

v.

**FMC CORPORATION, FLUID CONTROL DIVISION, Defendant.**

**Civ. A. No. H–80–2297.**

United States District Court, S.D. Texas, Houston Division.

Nov. 10, 1982.

---

Chris Dixie, Houston, Tex., for plaintiff.

James J. Loeffler, Brynley James, III, Fulbright & Jaworski, Houston, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

McDONALD, District Judge.

### Introduction

Plaintiff, Lodge No. 12 of District 37, International Association of Machinists and Aerospace Workers, AFL–CIO, brought this civil action on behalf of the union, pursuant to Section 301 of the Labor Management Relations Act, (1947), as amended, 29 U.S.C., Section 185 and under 28 U.S.C. Sections 2201–2202, alleging the existence and breach of an oral labor agreement which FMC Corporation (hereinafter FMC) failed to incorporate in the final written collective bargaining agreement between parties.

Trial of this non-jury action commenced on July 8, 1982, and required one (1) day of testimony. At trial, plaintiff Union presented testimonial and documentary evidence concerning the existence of an oral contract binding FMC to pay a wage increase retroactive to July 21, 1980. At the conclusion of plaintiff's case, the defendant presented testimonial, documentary and expert evidence to refute plaintiff's claim of an oral agreement to pay a retroactive wage increase, and that the parties' three-year written collective bargaining agreement stands as a fully integrated document which defines all of the rights and duties of the parties.[1] The parties submitted posttrial proposed Findings of Fact and Conclusions of Law. After having considered the record, the testimony and demeanor of the witnesses, the exhibits, arguments of the parties and the applicable law, the Court now enters its Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

### Findings of Fact

1. Plaintiff is a labor organization within the meaning of the Labor Management Relations Act, and has been certified by the National Relations Board on July 27, 1980, as the exclusive bargaining representative of certain of the defendant's employees at its Fluid Control Division Plant in Houston, Texas.

2. Defendant is engaged in interstate commerce and is an employer within the

---

1. This Court heard the parol evidence to determine if a document which on its face appears to be a fully-integrated agreement is in fact not a contract. See *Corbin on Contracts,* § 581 (1960); Calamari & Perillo, *Contracts 2nd HB,* § 3–4 (1977); Restatement, (Second) of Contracts, § 243.

meaning of the Labor Management Relations Act.

3. On or about July 21, 1977, plaintiff and defendant entered into a written collective bargaining agreement covering the employees represented by the plaintiff. Said agreement was to expire by its terms on July 21, 1980.

4. On or about May 16, 1980, the Teamsters, a rival labor organization, filed a petition with the National Labor Relations Board seeking to represent the same employees of defendant represented by plaintiff.

5. At an election conducted by the National Labor Relations Board on July 17, 1980, a majority of the employees voting voted to retain plaintiff as their exclusive representative for collective bargaining. On July 27, 1980, the National Labor Relations Board certified the results of this election.

6. On July 28, 1980, the parties executed an agreement extending the terms of the 1977 collective bargaining contract until September 21, 1980. This extension agreement expired by its terms on September 21, 1980, at 11:00 p.m. Mr. George Hooper testified that the reason the parties entered into the extension agreement was to give the Union and the company adequate time to renegotiate a new agreement.

7. On September 20, 1980, defendant extended to plaintiff a written offer of a contract proposal which contained certain economic terms and included a provision which would have made the first year wage increase retroactive to July 21, 1980, the date of the expiration of the parties' prior agreement. Mr. Kinnear testified that the consideration for the retroactive wage increase provision was that the Union would not strike during the sixty day negotiation period. Similarly, Mr. George Hooper, the Union's chief negotiator testified as follows:

Q That extension agreement bound the union not to strike for the next sixty days; did it not?

A Until September 21, 11:00 p.m.

Q And it also bound the company that if the parties arrived at a full and complete contract *during that period of time* the company had to make wage retroactive to July 21, 1980?

A Any wage rate that was agreed to would be retroactive to July 21.

Q *That was sort of the consideration or quid pro quo for the union having given up its right to strike?*

A *That's right.*

Q It is commonly done in labor relations; is it not?

A It is not unusual.

(Excerpt of Proceedings No. 2, p. 24, 25) (emphasis added). Accordingly, this Court concludes that the retroactive wage increase provision of the extension agreement was contingent upon the Union not engaging in a strike.

8. On September 21, 1980, plaintiff advised FMC's bargaining representative that its final offer was rejected and that its members would go on strike. The strike commenced upon the expiration of the extension agreement at 11:00 o'clock p.m., September 21, 1980. Plaintiff contends that the strike vote was not a rejection of the company's September 20th offer. Defendant's expert, Mr. Samuel Hooper testified that the parties had bargained to an impass and based on his experience as a labor negotiator, the union strike was a rejection of the company's offer.

9. On September 22, 1980, defendant's operation manager, Peter Kinnear, mailed by U.S. certified mail, a letter to plaintiff's chief negotiator and business representative, George Hooper, which stated in part:

"During negotiations the company proposed and the union rejected the company wage proposal. Please be advised that the company is planning to effectuate the company's wage proposal without retroactivity (sic) immediately."

This letter was received by George Hooper on or about September 25, 1980.

10. On September 25, 1980, Peter Kinnear mailed by U.S. mail to plaintiff's members and agents, including George Hooper, a letter which stated in part:

"For those who are working, we have placed into effect the last company wage offer of $1.25 per hour increase upon return to work. You may return to work at your old wage rate plus $1.25 per hour more."

This letter was received by George Hooper and many of the plaintiff's members on or before September 27, 1980.

11. On September 30, 1980, George Hooper telephoned Mr. Kinnear and advised him that the union's members had voted to accept defendant's last offer of September 20 and that the Union was now accepting same. Mr. Kinnear suggested to Mr. Hooper that the representatives of the parties meet with the federal mediator to make sure each party understood the other party's position.

12. Plaintiff maintains that between September 20, 1980, and the union's acceptance of the defendant's last offer on September 30, 1980, the defendant did not communicate any withdrawal, revocation or amendment of its offer of September 20. Defendant argues that the September 20, 1980 offer which contained a provision for a wage increase retroactive to July 21, 1980, was withdrawn after Plaintiff rejected the offer by striking on September 21, 1980. Defendant also maintains that the letters dated September 22 and 25, 1980, notified Plaintiff's officers, agents, and members that the offer of a retroactive wage increase was withdrawn and that the wage increase would be effective on September 22, 1980. Plaintiff contends that the letters dated September 22 and 25, 1980 did not constitute an amendment, modification or revocation of the wage retroactivity provision. The Court need not resolve the conflicting interpretations of the September 22 and 25, 1980 letters but rather, rest its holding on the application of the parol evidence rule and the doctrine of merger to the facts of this case.[2]

13. On October 2, 1980, the parties authorized representatives to review their positions with reference to the execution of a new collective bargaining agreement. At this meeting, there ensued a discussion concerning the effective date of the first year wage increase. Defendant reminded plaintiff's representatives that its letters of September 22, and 25 withdrew and/or modified its earlier offer of a retroactive wage increase. Plaintiff took the position that its vote on September 30, 1980 constituted an acceptance of defendant's September 20 proposal which included its provision for a retroactive wage increase. The meeting was adjourned to give plaintiff the opportunity to confer with legal counsel.

14. On October 3, 1980, the parties met again and plaintiff's representatives read a prepared statement to defendant's representatives to the effect that plaintiff would sign a new agreement under protest in order to avoid further economic loss to both parties. In that statement, the Union stated that they believed the Company is under a legal duty to provide the benefits of the original agreement and reserved all rights to the Union's legal position on this matter. Defendant's representatives stated that they disagreed with plaintiff's protest, but were prepared to execute a collective bargaining agreement with the plaintiff. In this Court's opinion, the Union's reservation simply sought to preserve its legal right to file a unfair labor practice charge against the Company for failing to bargain in good faith.

15. On October 3, 1980, the authorized representatives of the parties executed a formal written collective bargaining agreement. The twenty page agreement was signed by nine representatives of the plaintiff, including George Hooper. A three page attachment relating to increased insurance benefits was also signed by the same nine agents of the plaintiff. Six representatives of the defendant, including Mr.

---

2. In a collective bargaining setting, a contract offer is not automatically terminated by the other party's rejection unless it is expressly withdrawn or made contingent upon some condition subsequent. *Pepsi-Cola Bottling Co., Etc. v. NLRB,* 659 F.2d 87 (8th Cir.1981). In the case at bar, the offer of a retroactive wage provision was contingent upon the Union not engaging in a strike.

Peter Kinnear, signed the agreement and attachment for defendant. Mr. George H. Hooper testified that no attempt was made to attach the statement of protest or incorporate it by reference in the agreement, and the statement of protest did not become a part of the contract between the parties.

16. The first paragraph of the agreement provides that it "shall govern relations between the company [defendant] and the union [plaintiff] with regard to collective bargaining . . .", and that the "parties do hereby agree and contract as follows:". Article XIV, Section 3 of the agreement sets forth the wage rate schedules for each of the three years of the contract's duration and lists the effective date of the wage increases for each year. The effective date of the first wage increase is explicitly stated as "9–22–80."

17. It is undisputed that both parties knew this provision was part of the contract at the time of its execution. Mr. George H. Hooper testified that "we (the Union) understood the company's position regarding the issue of wage retroactivity clearly on October 2, 1980." On that date, Mr. Kinnear went through the collective bargaining agreement point-by-point in order to assure that the Union representatives were aware of all the changes in the collective bargaining agreement. It is further undisputed that the parties understood 9–22–80 to mean September 22, 1980. It was not alleged, nor is there evidence, that this term was included in the contract as a result of mistake, fraud, or duress. On the contrary, it is clear to the Court that the plaintiff fully understood the meaning and effect of this term and executed the contract after discussions with legal counsel.

18. The effect of the wage provision term was to create a contract between the parties whereby the first year wage increase would take effect on September 22, 1980, and be payable for hours worked on or after that date and through July 20, 1981, at which time the second year wage increase would take effect. It is not alleged, nor is there any evidence that this portion of the parties' contract was subsequently modified or amended.

19. Following the execution of the collective bargaining agreement on October 3, 1980, plaintiff filed an unfair labor practice charge with the National Labor Relations Board (N.L.R.B.) alleging the existence of a contract between the parties whereby defendant had agreed to make the first year wage increase retroactive to July 21, 1980. The charge further alleged that the defendant's refusal to execute a written agreement incorporating the provisions for retroactivity constituted a refusal to bargain in violation of Section 8(a)5 of the National Labor Relations Act. The evidence shows that the National Labor Relations Board investigated this charge, advised plaintiff that its allegations lacked merit and informed plaintiff that the charge would be dismissed unless withdrawn by plaintiff. Plaintiff then withdrew the unfair labor practice charge, did not appeal, and filed its complaint in this case.

20. The three-year collective bargaining agreement signed on October 3, 1980, has governed the employer-employee relationship of the parties during the pendency of this action.

### Conclusions of Law

1. Plaintiff claims the existence of a prior oral contract which defendant FMC Corporation failed to incorporate in the final written collective bargaining agreement signed by the parties. The Court finds it significant that plaintiff properly filed a charge with the National Labor Relations Board alleging that the company was engaging in unfair labor practices within the meaning of Section 8(a)5 and that upon investigation and consideration of the plaintiff's charge, the National Labor Relations Board refused to issue a complaint and the charge was withdrawn. Viewed in its proper light, plaintiff's complaint is nothing more than an invitation to the Court to review the bargaining history of the parties for unfair labor practices. The Court declines such a role, mindful that the permissible scope of proper judicial in-

quiry is narrowly circumscribed by Section 301 of the Labor Management Relations Act. The General Counsel of the National Labor Relations Board has the unreviewable authority to determine whether a complaint should be filed.[3] As the Supreme Court stated in *National Labor Relations Board v. Sears, Roebuck & Company,* 421 U.S. 132, 138, 95 S.Ct. 1504, 1510, 44 L.Ed.2d 29 (1975):

> Although Congress has designated the Board as the principal body which adjudicates the unfair labor practice case based on such a charge, 29 U.S.C. 160, the Board may adjudicate only upon the filing of a "complaint"; and Congress has delegated to the office of General Counsel on "behalf of the Board" the unreviewable authority to determine whether a complaint shall be filed. 29 U.S.C. § 153(d); *Vaca v. Sipes,* 386 U.S. 171, 182, 87 S.Ct. 903, 912, 17 L.Ed.2d 842 (1967).

*See also Bova v. Pipefitters & Plumbers Local 60, AFL–CIO,* 554 F.2d 226 (5th Cir. 1977). This Court does not have jurisdiction to afford plaintiff relief from the Company's alleged unfair labor practices under the guise of adjudicating a breach of contract action.[4] *Textile Workers Union of America v. Artista Mills Co.,* 193 F.2d 529 (4th Cir.1951). Nor may the Court remake the parties' collective bargaining agreement. It may declare an implied obligation to exist only where the express provisions of the agreement provide a satisfactory basis on which to alter the duties and obligations of the parties. *Eazor Express, Inc. v. International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 520 F.2d 951 (3rd Cir.1975).

 2. In the case before us, the Court must determine from the relevant evidence if the collective bargaining agreement signed on October 3, 1980, by representatives of the union and FMC constitutes an integrated document defining the rights and duties of the parties. Whether a writing has been adopted as an integrated agreement or not is a factual question. *See* Restatement (Second) of Contracts, § 209. Plaintiff contends that the union signed the contract "under protest" which evidences a lack of mutual assent to the written collective bargaining agreement. In this Court's opinion, the reading of a formal statement by union representatives before signing the agreement was an expression of dissatisfaction with the company's final agreement. However, the failure of the Union representatives to incorporate into the contract their disagreement with the wage provision terms precludes this Court from reforming the written collective bargaining agreement. Accordingly, this Court concludes that the agreement signed by the parties was intended to be the final statement of the rights and duties of the parties.[5] This conclusion is strengthened by reference to the agreement which provides in the first

**3.** The two exceptions to the above rule are not applicable in the instant case. The decision of the NLRB General Counsel is reviewable where the Board has acted contrary to or beyond the scope of the National Labor Relations Act. *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). A federal court may also review a decision of the General Counsel where the face of the complaint clearly indicates that the NLRB procedures work a deprivation of constitutional rights. *Boire v. Miami Herald Publishing Company,* 343 F.2d 17 (5th Cir. 1965).

**4.** Neither does 28 U.S.C. §§ 2201–2202 grant the district court primary jurisdiction in a declaratory judgment action in which the ultimate concern of the parties was the existence or threat of unfair labor practices. *See La Plant v. McColloch,* 382 F.2d 374 (3rd Cir.

1967), *cert. denied, Professional Emp. of I.T.T. Federal Laboratories v. McCullock,* 389 U.S. 1039, 88 S.Ct. 777, 19 L.Ed.2d 829 (1967); *California Ass'n of Emp. v. Building and Const. Trade of Reno, Nev. and Vicinity,* 178 F.2d 175 (9th Cir.1949).

**5.** *United States Navigation Co., Inc. v. Black Diamond Lines,* 124 F.2d 508, 510, *cert. denied,* 315 U.S. 816, 62 S.Ct. 805, 86 L.Ed. 1214 (1942), discussed by plaintiff extensively in his post-trial brief, is factually distinguishable from the case at bar. In *Black Diamond Lines,* the charterer of the vessel returned the contract signed under protest with reservations in writing that the contract did not correctly state the terms of the contract. Thus the *Black Diamond Lines* case is legally distinguishable from the case at bar.

paragraph that it "shall govern relations between the company and the union with regard to collective bargaining . . .", and that the "parties do hereby agree and contract as follows:".

■ 3. Plaintiff contends that this Court has unfettered discretion to examine the course of the parties' negotiations, to determine if any other agreement arose, and if so, enforce any such agreement found to exist. In support of this proposition, plaintiff relies on a body of case law in which the unifying thread is a factual determination by the NLRB that the company or union engaged in unfair labor practices by refusing to reduce to writing an orally agreed contract. *N.L.R.B. v. Strong,* 393 U.S. 357, 89 S.Ct. 541, 21 L.Ed.2d 546 (1969) (National Labor Relations Board found that the Company had committed unfair labor practices); *N.L.R.B. v. Wooster Division of Borg-Warner Corp.,* 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958) (National Labor Relations Board found that the employer had refused to bargain in good faith); *N.L.R.B. v. Haberman Construction Co.,* 641 F.2d 351, 357 (5th Cir.1981) (National Labor Relations Board found that the Company had committed unfair labor practices); *Siegel v. National Labor Relations Board,* 340 F.2d 309 (1965) (National Labor Relations Board found that the employer had refused to bargain in good faith). Such a finding by the Board is noticeably absent in the present case. Therefore, plaintiff's cases are both factually and legally irrelevant to the issue before the Court.

■ 4. In this Court's opinion, parol evidence precludes consideration of oral terms which would contradict the explicit, unambiguous provision of the October 3, 1980 collective bargaining agreement as to the effective date of the wage increase. The written collective bargaining agreement has governed the relationship between the parties for more than one and one-half years. Since the collective bargaining agreement is substantially performed and the Union has not sought to renounce the contract, we believe it would be improper to alter the contract at this date. *See Lewis v. Owens,* 338 F.2d 740 (6th Cir.1964). Although parol evidence is admissible to resolve an ambiguous provision in a contract, the facts presented here do not present such a case. In the present case, the effective date of the wage increase is explicitly stated in the collective bargaining agreement as September 22, 1980. Plaintiff claims that the parties entered into an oral agreement for a wage increase of $1.25 retroactive to July 21, 1980. There is a clear conflict between the plain meaning of the contract and the position the plaintiff would have this Court take. The great weight of authority has consistently held that where the language of the written contract is clear, the parol evidence rule precludes consideration of evidence to alter the terms of the contract. *United Steelworkers of America v. Warrior and Gulf Navigation Company,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Local 783 Allied Industrial Workers of America v. General Electric Company,* 471 F.2d 751, 758–59 (6th Cir.1973); *cert. denied* 414 U.S. 822, 94 S.Ct. 120, 38 L.Ed.2d 55 (1973) (evidence of bargaining history not admissible to explain meaning of written contract term which is clear on its face and not ambiguous); *Lewis v. Owens,* 338 F.2d 740, 743 (6th Cir.1964); *Wilkes-Barre Printing and Pressmen and Assistants Union v. Great Northern Press,* 522 F.Supp. 106, 109 (M.D.Pa.1981); *Local 1574 International Association of Machinists and Aerospace Workers v. Gulf and Western Manufacturing Company,* 417 F.Supp. 191, 198–99 (D.Main 1976) (where language of written agreement adopted by parties is clear, parol evidence rule precludes consideration of evidence of parties' actions and statements during negotiations). Application of this well-established principle in this case precludes evidence of a prior oral agreement from altering the terms of the agreement.

■ 5. Neither does this case fall into one of the many exceptions to the parol evidence rule. *See, e.g.,* Calamarei & Perillo, Contracts § 3–4, at 117 (2nd Ed.1977). Defendant does not contend and there is no evidence that FMC included the wage in-

crease provision in the contract as a result of mistake, fraud or duress. On the contrary, it is clear to the court that the plaintiff union signed the contract fully aware of the meaning of the terms and after careful deliberation. FMC's collective bargaining representative, Mr. Kinnear outlined the terms of the agreement on October 2. The Union recessed and after consultation with legal counsel signed the October 3, 1980 agreement.

6. Alternatively, even if the Court found an oral agreement providing for retroactivity of the wage increase provision, such an agreement could not have survived the subsequent execution of the written collective bargaining agreement which expressly excluded retroactivity. As the Fifth Circuit stated in *Harville Rose Service v. Kellogg Co.,* 448 F.2d 1346, 1349, *cert. denied,* 405 U.S. 987, 92 S.Ct. 1248, 31 L.Ed.2d 453 (1976):

> [A]ll prior and contemporaneous negotiations and promises are absorbed or merged into a written contract. This occurs when the oral product of the negotiations is subsequently reduced to a writing, and by virtue of the writing and merger, no prior or contemporaneous statements can be shown to vary or contradict the writing ...

The principle announced by the Fifth Circuit in *Harville Rose Service* is nothing more than a restatement of the well-established doctrine of merger. *See* 17 Am. Jur.2nd Contracts § 260, § 483. *See also* 4 Williston on Contracts, § 632A, at 987 (3rd Ed. 1961 & Supp.1981).

7. This Court is persuaded by the reasoning of *Warehousemen v. Sears Roebuck & Co.,* 79 L.R.R.M. 2907 (C.D.Cal.1972), that application of the merger doctrine in this context extinguishes any alleged prior oral agreement on a retroactive wage provision in the face of an explicit provision in the written contract.

8. The Fifth Circuit's instructions to courts within its jurisdiction as to the application of the parol evidence rule in the labor context could not be more specific:

> [I]n this circuit the Court must construe the language of the contract as finally agreed upon ... in accordance with ordinary rules of construction *without reference to the give and take of the bargaining sessions which produce the final terminology.* Otherwise we would abandon completely the parol evidence rule when dealing with this type of contract. (Emphasis in the original)

*Communication Workers of America v. Southwestern Bell Telephone,* 415 F.2d 35, 40 (5th Cir.1969). See also *N.L.R.B. v. Gulf Atlantic Warehouse Company,* 291 F.2d 475, 477–78 (5th Cir.1969).

9. In the face of this authority, plaintiff argues that the application of the parol evidence rule in this context would be inconsistent with federal policy. This Court strongly disagrees with such a contention. The Supreme Court has placed collective bargaining agreements such as the one discussed herein in a special class in which the technical rules of contract law are not strictly applied. In *Textile Workers Union of America v. Lincoln Mill,* 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957), the Supreme Court stated "we conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws." As the 6th Circuit stated in *Lewis v. Owens,* 338 F.2d 740 (1964), the purpose of written labor agreements is to settle questions which, if left unsettled would lead to industrial strife. In *United Steelworkers of America v. Warrior and Gulf Nav. Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, the court emphasized the importance of the collective bargaining agreement stating "it is more than a contract; it is a generalized code to govern a myriad of cases ..." Variation of written contracts by evidence of prior oral agreements would serve only to undermine the integrity of the agreements by interjecting an unnecessary element of uncertainty into the collective bargaining process. Accordingly, this Court finds that application of the parol evidence rule to preclude consideration of a prior oral agreement to alter an explicit term of the collective bargaining

**92**

agreement is consistent with federal labor policy.

*Conclusion*

In summary, the parol evidence rule and the doctrine of merger preclude in this factual situation the Court from altering an unambiguous provision of the collective bargaining agreement between the defendant, FMC Corporation and plaintiff, Union. For the reasons stated above, plaintiff's claim for relief is DENIED and the action is DISMISSED.