## UNITED STATES NAV. CO., Inc., v. BLACK DIAMOND LINES, Inc.
### (two cases).

District Court, S. D. New York.
July 22, 1943.

Carpenter & Stevenson, of New York City (by George C. Sprague, of New York City), for libellant.

Hunt, Hill & Betts, of New York City (by John W. Crandall, of New York City), for respondent.

BONDY, District Judge.

While each of the steamships "Black Hawk" and "Black Tern" was under charter by the respondent to the libellant for one South Africa round voyage Capetown/Beira range, negotiations were had for the continuance of these charters. The libellant contends that the negotiations resulted in an oral charter of the two ships for two to about five months' trading in the South Africa Capetown/Beira range, South America or the Far East. The respondent contends that they resulted in chartering the ships from two to about five months for one round voyage between the United States and South Africa, South America or the Far East, two months if used for a voyage to South Africa or South America and five months if used for a voyage to the Far East.

After these ships returned from a voyage to South Africa the respondent refused to let the libellant have the use of the ships for a second voyage to South Africa.

The libellant thereupon filed two libels to recover the damages which it claims it suffered by reason of the respondent's refusal to let it have the use of the vessels for a second voyage to South Africa. Both libels involve the same facts and were tried together.

The Circuit Court of Appeals for the Second Circuit, on exceptions to these libels on the ground that they failed to state a cause of action, decided that a written charter party providing for one round voyage only, imposed upon libellant against its will and signed by it under protest and to mitigate damages, did not supersede or discharge the oral charters, if any. United States Nav. Co. v. Black Diamond Lines, 2 Cir., 124 F.2d 508, certiorari denied 315 U.S. 816, 62 S.Ct. 805, 86 L.Ed. 1214. It did not decide that an agreement had been reached, or if so, what the terms thereof were, and it gave leave to respondent to join issue.

The negotiations for the charters were begun either in the afternoon of December 26, 1939, or in the morning of December 27, 1939. Until late in the afternoon of December 27, 1939, it was clearly understood that all negotiations with reference to the terms of the charters were based upon one round voyage by each ship, and that the respondent refused to consider any offer of less than $26,000 per month for each vessel.

Albert C. Valentine, Secretary and Treasurer of the respondent, who carried on the negotiations on its behalf with Forest L. Virtue, who it is now conceded was the agent of both parties, testified that at about 6:20 P. M., December 27, 1939, Virtue told him "all of the terms and conditions so far have been agreed to by United States Navigation Co., but they now want to insert in the trading limits the words 'two to about five months'". He then asked Virtue: "What is the reason for that? It is not necessary." and Virtue replied: "I will call Mr. Krener (charter manager of libellant) and find out." Thereafter Virtue again telephoned and stated: "Mr. Krener said if the vessels are used for a voyage to South Africa or South America it would take about two months; if they are used for a voyage to the Far East, it will take four or five months." He replied: "Well, I still do not see the necessity of putting the time in but if they want it stated, go ahead and put it in, and I will agree." At 6:30 o'clock Virtue again telephoned and said: "The charters are fixed," and "I said: 'O.K.'". "I took it for granted they were talking about one round voyage." One round voyage was "mentioned only by inference."

Valentine further testified with respect to putting time in the charter parties that: "I said I would agree to it. I thought it was more or less a whim because in the preceding conversation he said all the terms and conditions so far had been agreed to, and those terms and conditions were on the basis of one round voyage."

Virtue testified that at about 4:00 or 4:30 o'clock in the afternoon of December 27, 1939, he told Valentine: "Here is the position that the U. S. Navigation are in: I will make you a firm offer for their account on the basis of $25,000 per month for each vessel, for direct continuation for two to about five months period of time, South Africa, South America or the Far East." Virtue further testified: "Mr. Valentine asked 'Why this spread of two to about five months?' I said: 'I do not know, but I will find out.'"

After speaking with Mr. Krener, he called Mr. Valentine and told him: "I have asked Mr. Krener your question 'Why the spread in the period,' and the answer is that if they send the vessels to South Africa, it will take two months, South America two months, and the Far East

about five months." After he gave Mr. Valentine this explanation as to the period, Mr. Valentine said: "I will still do business on the basis of $26,000., two to about five months." "All the time I left it with the understanding that the bid had been made by me for the United States Navigation Company on the basis of two to about five months at $25,000." Mr. Valentine "told me that $26,000. was the best they would do, and I said on the basis of two to about five months," and "He said: 'I will do business on the basis of $26,000. two to about five months.' I then called up Mr. Krener and told him that Mr. Valentine would take $26,000. two to five months. * * * Mr. Krener came back and he said: 'We will take them that way.' And I called up Mr. Valentine and said: 'The boats are fixed on that basis, two to about five months, $26,000.' I said then: 'Do you want me to go over all these conditions with you, Mr. Valentine?' And he said 'No, we have been going over them all day long, and it is getting late and I want to get out.' And it was left that I was to draw up the charter party."

Krener testified that he told Virtue: "We thought that we should get an option at that rate ($26,000.), and therefore we elected to bid for the period of about two to about five months. I further explained it to Mr. Virtue by telling him that if the owners were willing to let the vessels go for a round voyage to the Far East, which would take about five months, that the owners should not have any objection in letting those vessels go for the same period in any other trade." Virtue, however, admitted that he did not tell Valentine when explaining the reason for the insertion of the words "for two to about five months" or at any other time on December 27, 1939, that libellant wanted an option for a second round voyage.

At the beginning the negotiations related to only one round voyage to South Africa at $26,000 per month for each vessel and Virtue and Krener knew that the respondent was interested in chartering the ships for only one round voyage. The negotiations subsequently were enlarged to include one round voyage to South Africa, South America or the Far East and were conducted on that basis throughout the entire day and also at the time when Virtue offered $25,000 and stated that all terms had been agreed to by the libellant but

that the libellant desired the insertion of the words "from two to about five months in the trading limits."

That Valentine did not understand at that time or at any subsequent time that the mere addition of those words changed the terms of the agreement from a one voyage charter to a fixed period charter without the limitation to one voyage is apparent from his inquiry as to the reason for adding the words and his statement that it was not necessary to do so. The inquiry and statement are not consistent with the understanding on his part that by the use of the words he would agree to a fixed period charter or a charter granting an option. That Virtue, an experienced shipbroker, did not understand that the words he was proposing would change the proposed voyage charter into a period charter and that he probably did not tell respondent that libellant desired a period charter is made apparent by Virtue's statement that he did not know the reason for adding the words but that he would call Krener and find out. When Virtue told Valentine that Krener said that if the vessels are sent to South Africa it would take two months, if to South America two months or if to the Far East five months, it was reasonable for Valentine under the circumstances to believe that they related to a one voyage charter agreement, two months if the ships were sent to South Africa or South America, five months if to the Far East. That it was so understood by Valentine to the very end is evident from the statement subsequently made by him: "Well, I do not see the necessity of putting the time in but if they want it stated, go ahead and put it in and I will agree."

Irrespective of what Krener told Virtue or its relevancy, Virtue admits that he never told Valentine that the libellant desired an option or the use of the ships for more than one voyage.

The court believes that the libellant failed to sustain its burden of proving that there was an accepted offer to charter the ships for two to five months without the limitation of only one round voyage to South Africa, South America or the Far East, and that it therefore does not appear that the respondent breached any agreement by refusing to let the libellant have the use of the ships for a second voyage to South Africa. The libels accordingly are dismissed.