## UNITED STATES NAV. CO., Inc., v. BLACK DIAMOND LINES, Inc.

### No. 188.

Circuit Court of Appeals, Second Circuit.

March 13, 1945.

---

John Tilney Carpenter, of New York City (George C. Sprague and John Tilney Carpenter, of counsel), for appellant.

Hunt, Hill & Betts, of New York City (John W. Crandall and Helen F. Tuohy, both of New York City, of counsel), for appellee.

Before CHASE, HUTCHESON, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The appellant had chartered the appellee's vessels Black Hawk and Black Eagle in November 1939 (the Black Tern being later substituted for the Black Eagle by agreement) and in December 1939, while these charters were in effect, desired to obtain continuation charters for the vessels. It undertook to obtain such charters through a broker named Virtue who was associated with the firm of A. L. Burbank & Co., Ltd., in New York. On December 27, 1939, Virtue, acting as the broker, carried on verbal negotiations by telephone between Krener, who represented the charterer, and Valentine, who represented the owner, to the point where it was thought by all that agreement had been reached and he was told to prepare the written charter parties. He did so some days later and presented them to Krener, who found them acceptable. When they were later presented to Valentine, he refused to execute them because the charter parties as drawn by Virtue were for a period "from two to about five months' trading South Africa, Capetown/Beira range, or South America or the Far East within the Institute Warranty limits." Valentine insisted that the oral agreement of December 27 was for charters for one round voyage by each ship within the range limits. Virtue then, reserving all his rights as broker under the agreements as drawn by him, amended them by inserting the words "for one round voyage" after the word "trading" in the above quotation.

When the documents as thus amended were presented to Krener he refused to sign because he insisted that the agreement of December 27 was for time charters, as the original drafts made by Virtue provided. The parties were unsuccessful in their subsequent attempts to agree on this point, and at a meeting of their representatives on January 12, 1940, the owner stated that unless the charter parties were signed the appellant could not have the ships. On January 15 the appellee wrote the appellant that unless the charter parties were signed by noon of January 17 "we must assume that you have no intention of so doing and that you do not intend to carry out the agreement whereby these vessels were fixed to you." On January 17 the appellant signed the charter parties under protest and sent them to the appellee with a letter stating that, "In view of your January

15th letter and your other statements that you will not let us have the use of these vessels when their current charters expire unless we sign the charter parties in the form demanded by you—which do not correctly state the periods and trading limits which we agreed upon—we return them herewith duly signed by us, under protest, and reserve our rights in the premises." The appellee, making no reply to this protest, delivered the ships under the charters. They made one round voyage to South Africa, and when the appellant demanded their use for a second voyage within the two to five months period the appellee refused. The appellant then chartered other ships for which it had to pay higher rates. These suits were brought to recover this excess hire. The suits were consolidated for hearing below. No breach of the oral agreement by the appellee was found and the libels were dismissed on the merits. United States Navigation Co., Inc. v. Black Diamond Lines, Inc., D.C., 51 F.Supp. 717. The libellant has appealed.

Previously exceptions to the libels were sustained in the District Court and they were dismissed for failure to state a cause of action. United States Navigation Co., Inc. v. Black Diamond Lines, Inc., D.C., 37 F.Supp. 1005. On appeal from those decrees, the libellant obtained a reversal in this court when we held that the execution of the written charter parties under protest did not preclude it from showing that the oral charters were time and not voyage charters and that the refusal of the appellee to execute the written charter parties as at first drawn and to permit the ships to make the second voyage demanded by the appellant violated the agreement. United States Navigation Co., Inc., v. Black Diamond Lines, Inc., 2 Cir., 124 F.2d 508, certiorari denied 315 U.S. 816, 62 S.Ct. 805, two cases, 86 L.Ed. 1214.

The appellee then joined issue on the libels, and after a hearing the court found on adequate evidence that the negotiations of December 27 began on the basis of one round voyage of each ship to South Africa, for which the appellee asked $26,000 per month for each vessel, and that both Virtue and Krener then knew that the appellee "was interested in chartering the ships for only one round voyage." Valentine and Krener each talked by telephone with Virtue, who as the broker acted as the intermediary. During the day many relevant matters were discussed through Virtue. At one time the latter telephoned Valentine that the appellant wanted to extend the trading limits to include South America and the Far East because it had operated in those areas and might wish so to operate one or both of the vessels, and Valentine consented. Later Virtue telephoned Valentine that the appellant offered $25,000 per month per ship, but Valentine refused that offer and anything less than the previously stated price of $26,000.

Thus matters rested until late in the afternoon, when Virtue told Valentine by telephone that appellant agreed to all the terms and conditions so far but wanted to insert in the trading limits the words "two to about five months." When Valentine told Virtue that that was not necessary and asked why it was wanted, Virtue replied that he would find out. Virtue then telephoned Krener, and after talking with him the court found that he "telephoned Valentine again and said that the reason why the libellant wanted the words 'two to about five months' inserted in the charters was that if the vessels were used for a voyage to South Africa or South America it would take about two months, whereas if they were used for a voyage to the Far East it would take four to five months." Valentine repeated that he did not see the necessity for inserting the time, but said "if they wanted it so stated to put it in and he would agree." After that Virtue "again telephoned Valentine and said the charters were fixed, and Valentine said 'O.K.' and told him there was no need to rush the preparation of the written charters." The aftermath has already been outlined above. The trial judge held that the libellant had the burden to show that the vessels had been chartered "to the libellant for two to about five months * * * to South Africa, South America or the Far East, and it failed to sustain this burden."

■■ The appellant does not deny that the burden to show what the oral charters were rested upon it, as indeed it did, but seeks by a rather ingenious argument to show that the trial judge fell into error of law in failing to find as facts both that the oral charters were on a time basis and that they covered the period of two to about five months. The position of the appellant as to this is that the owner's offer to charter at $26,000 per month for one round voyage was rejected as a matter of law by the charterer's counter offer of $25,000 per month for two to about five months and

that the charterer's final offer of $26,000 per month for two to five months which the owner accepted was not an offer limited to one round voyage. When it is thus stated no one could justly quarrel with the conclusion reached by the appellant. It is well settled that parties who undertake to contract are bound, if the clear meaning of the words used shows an agreement, without regard to any secret reservations which either may have entertained, for the only relevant intent in such circumstances is the intent to say what they did say. National Pub. Co. v. International Paper Co., 2 Cir., 269 F. 903; Eustis Mining Co. v. Beer, Sondheimer & Co., Inc., D.C., 239 F. 976; C. H. Pope & Co. v. Bibb Mfg. Co., D.C., 290 F. 586. See Corbin, The Parole Evidence Rule, (1944) 53 Yale L.J. 603.

■■ But decision on this appeal is not so simple, for while parties may be bound contractually as a matter of law because in fact they clearly manifested an assent to a definite proposal, in determining whether there was such an assent by this appellee to such a proposal, the words themselves cannot be plucked from the setting in which they were used and construed merely as language. Here men of experience in chartering ships had been resolving their initial differences as to terms during a day of negotiation on the basis of one-voyage charters, when the appellant proposed to the appellee through the broker that the words "two to about five months" be inserted. Valentine for the appellee at once asked the broker why, and the latter, saying he did not know but would find out, called Krener and then informed Valentine as above stated. Valentine, repeating that the additional words were unnecessary, agreed to having them put in. Valentine was not told when he asked why the words were wanted in the charters that the charterer desired time charters or an option for second round voyages but instead was told that the reason was that a South African or South American voyage would take about two months while a voyage to the Far East would take four or five months. He was willing then to have the words inserted but he did not manifest any willingness to omit the limitation to one round voyage on the basis of which the negotiations had all the time been carried on. Under these circumstances it was for the trial judge to determine whether the appellant had proved that Valentine had agreed to time charters instead of voyage charters, and, since he found that it had not, the finding must be given effect on appeal unless clearly erroneous. Petterson Lighterage & Towing Corporation v. New York Central R. Co., 2 Cir., 126 F. 2d 992.

■■ It was not clearly erroneous unless a reasonable man in Valentine's position should have known when he assented to the addition of the words "two to about five months" that he was assenting to a proposal which eliminated the one-voyage limitation on which he had all the time been insisting. That he was at first puzzled by the request for insertion of the words is understandable, and equally so is his statement when he agreed to them that they were unnecessary. Of course they were superfluous in one-voyage charters. But when Virtue told him why they were wanted, Valentine could reasonably understand that the words were but in addition to the one-voyage limitation, and their insertion was merely for the purpose stated and could agree to it because they added nothing which changed the terms. Consequently the trial judge had ample support in the evidence for finding as he did that "Valentine never at any time understood that the mere addition of the words 'two to about five months' changed the terms of the proposed agreement from a one-voyage charter for each ship to a fixed period charter without limitation to one voyage." His actual understanding, being what a reasonable man in like circumstances could have understood the proposal of the charterer to be, is the meaning which the law will impute to the proposition to which he assented. Howe & Rogers Co. v. Lynn, 2 Cir., 71 F.2d 283. The conclusion of the court below that the appellant did not prove that the appellee accepted an offer of the appellant to charter the ships for two to about five months without the limitation of only one round voyage was, therefore, without error and there was a failure to prove the alleged cause of action in each suit.

Affirmed.